# HUNTER *v.* MUTUAL RESERVE LIFE IN-
# SURANCE COMPANY.

### ERROR TO THE SUPREME COURT OF THE STATE OF NEW
### YORK.

No. 39.    Argued November 7, 1910.—Decided December 12, 1910.

A few separate and disconnected transactions by a foreign corporation after its withdrawal from a State, all relating to matters existing before such withdrawal do not constitute doing business in that State so as to preclude such a corporation from revoking the power of attorney to accept process given by it to a state officer as required by statute of the State to enable it to enter and do business in the State. *Connecticut Mutual Life Ins. Co.* v. *Spratley,* 172 U. S. 602; *Mutual Reserve Fund Life Association* v. *Phelps,* 190 U. S. 147; *Mutual Reserve Ins. Co.* v. *Birch,* 200 U. S. 612; *Commercial Mutual Accident Co.* v. *Davis,* 213 U. S. 245, distinguished.

A power of attorney to a state officer to accept process required by statute to be given by a foreign corporation as a condition for doing business in the State although irrevocable in form, may be revocable, on the withdrawal of such corporation from the State, as to matters not connected with business transacted in such State or with residents thereof; and the courts of one State are not required to give full faith and credit, under the Federal Constitution, to a judgment of another State against a corporation based on service on a state officer of that State, in which said corporation had done business but from which it had in good faith withdrawn after revoking the power of attorney which it had given to such officer as a condition for doing business in the State, and where the cause of action did not arise in, or was not connected with a transaction arising in such State, or in favor of a citizen thereof.

184 N. Y. 136, affirmed.

THE facts are stated in the opinion.

*Mr. Paul Armitage* for plaintiff in error:

A State has the arbitrary power to exclude foreign in-

surance companies altogether from her territory. *Hooper v. California,* 155 U. S. 648, 655. The business of insurance is not commerce. The contract of insurance is not an instrumentality of commerce. Issuing a policy of insurance is not a transaction of commerce. Such contracts are not interstate transactions though the parties may be domiciled in different States. They do not constitute a part of the commerce between the States. *Paul v. Virginia,* 8 Wall. 168; *Phila. Fire Association v. New York,* 119 U. S. 110; *Crutcher v. Kentucky,* 141 U. S. 47; *Hooper v. California,* 155 U. S. 648.

A State has the power, if she allow any such insurance company to enter her confines, to determine the conditions on which the entry shall be made and the right to enforce any conditions so imposed. The power to exclude embraces the power to regulate and the power to enact and to enforce such regulations.

When a foreign insurance corporation undertakes to transact business in a State other than that in which it is incorporated, it submits itself to the authority of the courts of such other State, and is bound, so long as that business continues, by the statutory provisions respecting the method of such courts obtaining jurisdiction over it. *Pringle v. Woolworth,* 90 N. Y. 509; *People v. Life Insurance Co.,* 7 App. Div. 297; *Gibbs v. Queens Ins. Co.,* 63 N. Y. 120. It becomes bound by judgments rendered upon service on the designated agent, because it has consented so to be bound. *Douglass v. Ins. Co.,* 138 N. Y. 220; *Mutual Reserve Assn. v. Phelps,* 190 U. S. 147; *Gibson v. Mfg. Ins. Co.,* 144 Massachusetts, 81; *Aldrich v. Blatchford,* 175 Massachusetts, 369; *Vose v. Cockroft,* 44 N. Y. 415; *Sherman v. McKeon,* 38 N. Y. 266; *Phyfe v. Eimer,* 45 N. Y. 102. The service on the insurance commissioner was not effectual. *Mutual Life Ins. Co. v. Spratley,* 172 U. S. 610; *Mutual Reserve Assn. v. Phelps,* 190 U. S. 147.

Upon the facts herein, the defendant company con-

tinued to do business in North Carolina, after the attempted revocation of the power of attorney given to the insurance commissioner, and was actually doing business within the State on the date when service of process was made in each of the suits resulting in the four judgments. *Paul* v. *Virginia*, 8 Wall. 168; *Phila. Association* v. *New York*, 119 U. S. 110; *Crutcher* v. *Kentucky*, 141 U. S. 47.

The business of insurance is not within the protection of the commerce clause of the Federal. Constitution. A foreign insurance corporation has no right to do any part of its insurance within the borders of a State, except by its express permission and under the conditions imposed.

It is only when a corporation undertakes to engage in a local business elsewhere than in the State of its creation that it comes within the grasp and control of other state sovereignty. The case of a foreign insurance company is wholly different. It is not engaged in interstate commerce. No portion of its business is of that character.

The Court of Appeals held that the defendant insurance company did not continue to do any business within the State of North Carolina after May 18, 1899, and was not doing business therein at the time of service of process in the suits in question, but this was grave error. The Mutual Reserve Insurance Company continued to do and was at the time of service of process doing insurance business within the State and subject to the jurisdiction of its courts. *Mutual Life Ins. Co.* v. *Spratley*, 172 U. S. 602; *Goldey* v. *Morning News*, 156 U. S. 519; *Merchants' Mfg. Co.* v. *Railway*, 13 Fed. Rep. 358; *Birch* v. *Mutual Reserve Ins. Co.*, 200 U. S. 612.

Where an insurance company goes into a State and makes contracts of insurance, it does not cease to do business simply because it withdraws its agents and solicits no new business.

The court of North Carolina had jurisdiction in ac-

tions brought against foreign corporations by residents of that State "for any cause of action." *Shields* v. *Life Ins. Co.*, 119 N. C. 380.

The attempted revocation was not effective to revoke the insurance commissioner's power to receive process in any lawful action.

Even if it be assumed (arguendo) that the defendant company in good faith withdrew from North Carolina and ceased to do any business therein after May 18, 1899, it was still liable to be sued in the courts of North Carolina in any action or legal proceeding, and the insurance commissioner was, at the time of the service of process therein, the agent of the defendant for the purpose of service in any action or legal proceeding of every nature of which the courts of North Carolina had jurisdiction.

North Carolina had the right to prescribe such conditions as it saw fit before allowing a foreign corporation to do business within its borders. *Anglo-American Prov. Co.* v. *Prov. Co.*, 169 N. Y. 506, 510; *Hooper* v. *California*, 155 U. S. 648; *Aldrich* v. *Blatchford*, 175 Massachusetts, 371, and cases cited; *Youmans* v. *Title Ins. Co.*, 67 Fed. Rep. 282; *Johnson* v. *Ins. Co.*, 132 Massachusetts, 432; *Wilson* v. *Fire Alarm Co.*, 149 Massachusetts, 24; *Mooney* v. *Buford Mfg. Co.*, 72 Fed. Rep. 32; *Darlington* v. *Rogers*, 36 Legal Int. 115.

The power of attorney is not subject to the application of the old doctrine that one not coupled with an interest is revocable, but is one between a sovereign State, acting as the representative of all its citizens, and a corporation, by which the corporation has obtained a lucrative business. This alone is sufficient to sustain the power of attorney and forbid its revocation.

The other authorities establish the same doctrine, that a power of attorney given for a valuable consideration or as security is irrevocable. *McGregor* v. *Gardner*, 14 Iowa, 326; Ewel's Evans Agency, p. 110, note 1; 2 Kent's

Commentaries, 643; Story on Agency (9th ed.), p. 587; *Terwilliger* v. *Railroad Co.,* 149 N. Y. 87.

*Mr. William Beverly Winslow, Mr. Wm. Hepburn Russell* and *Mr. Frank H. Platt* for defendant in error:

The judgments rendered by the Superior Court of North Carolina were not enforceable in New York unless that court had jurisdiction of the person of the defendant.  To obtain such jurisdiction it was necessary that process be served upon an authorized agent of the defendant corporation.  Art. IV., § 1, Fed. Const.; *Thompson* v. *Whitman,* 18 Wall. 457; *Huntington* v. *Attrill,* 146 U. S. 657, 685; *Germania Savings & Loan Society* v. *Dormitzer,* 192 U. S. 125; *National Exchange Bank of Tiffin* v. *Wiley,* 195 U. S. 257, 269–270.

To confer jurisdiction upon the courts of a State to render a judgment against a foreign corporation it is essential that service be made upon an agent of the company whom the law will imply is authorized to receive service, and the corporation must be engaged in doing business in such State.  *Pennoyer* v. *Neff,* 95 U. S. 714; *St. Clair* v. *Cox,* 106 U. S. 350; *Goldey* v. *Morning News,* 156 U. S. 518; *Barrow Steamship Co.* v. *Kane,* 170 U. S. 100, 111; *Conn. Mutual Ins. Co.* v. *Spratley,* 172 U. S. 602; *Conley* v. *Mathieson Alkali Works,* 190 U. S. 406; *Geer* v. *Mathieson Alkali Works,* 190 U. S. 428.

The North Carolina court when it rendered these judgments did not have jurisdiction of the defendant corporation.  There was no service of process except upon the insurance commissioner, who was not the agent of the defendant to receive service of process in such actions. *Smithsonian Institution* v. *St. John,* 214 U. S. 19; *St. Louis, K. C. & Col. R. R. Co.* v. *Wabash R. R. Co.,* 217 U. S. 247.

A power of attorney, although irrevocable in terms, is revocable unless coupled with an interest or given for a consideration.  *Hunt* v. *Rousmanier's Adm.,* 8 Wheat. 174;

*Knapp* v. *Alvord*, 10 Paige, 205; Story on Agency (9th ed.), 587, § 476.

The power of attorney in this case was not given for a consideration. Such a power of attorney as this cannot be kept alive by reason of such statute, except as to such persons as acquired vested rights thereunder prior to the revocation of the power of attorney. *Johnson* v. *Ins. Co.*, 132 Massachusetts, 432; *Wilson* v. *Fire Alarm Co.*, 149 Massachusetts, 24; *Mooney* v. *Buford Mfg. Co.*, 72 Fed. Rep. 32; *Youmans* v. *Title Ins. Co.*, 67 Fed. Rep. 282.

As service was not made upon an agent of the company, it is immaterial whether or not defendant was doing business in North Carolina. Defendant was not in fact doing business in North Carolina. *Connecticut Mutual Ins. Co.* v. *Spratley*, 172 U. S. 602, and *Mutual Reserve Assn.* v. *Phelps*, 190 U. S. 147, do not apply. They simply show, that in the absence of the power of attorney to the insurance commissioner, the corporation could be sued by any policy-holder in North Carolina, who obtained service upon an agent of the corporation because the corporation in continuing its dealings with the policy-holders would be held to be so far doing business in the State as to support such service. We are not dealing here with such a case. This is a case where a stranger to all the transactions conducted by the defendant in North Carolina instituted an action in that State against the defendant.

While the State can forbid the corporation coming into the State to make a contract, it cannot forbid its citizens from lawfully making a contract with the corporation at its domicil and thereafter performing the contract through the mail. *Allgeyer* v. *Louisiana*, 165 U. S. 578. Nor can it impair the obligation of its contracts any more than it can an individual's. *Bedford* v. *Eastern Building & Loan Assn.*, 181 U: S. 227, 240.

Before it revoked the appointment of the insurance

commissioner of North Carolina as its attorney upon whom process could be served in that State, the Mutual Reserve Fund Life Association was licensed to do business in that State; after such revocation it would have been, as to any new business which it might have done in the State, violating the North Carolina law, but not subjecting itself to the jurisdiction of the North Carolina courts over its person by so "doing business." Any provision in the statutes of North Carolina making it subject to such jurisdiction merely because it was "doing business" in violation of law, without service upon a then authorized agent in the State, is in violation of the Constitution of the United States and a judgment *in personam* against it, not based on personal service on an authorized agent, is void. *Caledonian Coal Co.* v. *Baker*, 196 U. S. 432, 444; *Wetmore* v. *Karrick*, 205 U. S. 141; *Cella Commission Co.* v. *Bohlinger* (C. C. A.), 147 Fed. Rep. 419.

MR. JUSTICE MCKENNA delivered the opinion of the court.

This writ of error is prosecuted to review a judgment of the Court of Appeals of the State of New York, modifying a judgment of the Supreme Court of that State. The judgment of the Court of Appeals was remitted to and made the judgment of the latter court.

The action was brought by Hunter, whom we shall call plaintiff, against the insurance company, which we shall refer to as defendant, upon five judgments obtained in the State of North Carolina, recovered by one Emrick Wadsworth, a citizen of North Carolina, and owned by plaintiff. The judgments were recovered upon policies of insurance issued by defendant, one of which was issued to a citizen of North Carolina while defendant was doing business there, the others to citizens of New York and New Jersey. They were assigned to Wadsworth long after

defendant had attempted to remove from North Carolina. Judgment was rendered for their full amount with interest and costs, to wit, the sum of $9,965, by direction of the Appellate Division of the court to which the case was submitted upon an agreed statement of facts. The Court of Appeals reduced the same by the amount of the four judgments recovered on the policies issued in New York and New Jersey. The Federal question presented is whether due faith and credit was refused to the judgments, in violation of the Constitution of the United States.

The judgments were obtained by default after service made upon the insurance commissioner of the State. The decision of the case turns upon the validity of the service.

The defendant is a life insurance company, organized under the laws of New York. Prior to March 13, 1899, it was duly admitted to do business in the State of North Carolina, it complying with the laws of the State successively passed, which required insurance companies to appoint agents upon whom service of process could be made.

On March 6, 1899, the legislature passed a law known as the Willard law. The law prescribed that no foreign insurance company should do business in the State until it had, by a duly executed instrument filed in the office of the secretary of state, constituted and appointed the insurance commissioner its true and lawful attorney, upon whom all lawful process in any action or legal proceedings might be served, and agreed that such service should have the same force and validity as if served on the company, and that "the authority thereof" should "continue in force irrevocable so long as any liability of the company" should "remain outstanding in this Commonwealth." Chapter 54 of the Laws of 1899.

On or about the thirteenth of April defendant executed the power of attorney required, and thereupon a license

was issued to it to do business, as provided by law, under which it did business in the State for a time.

The legislature which passed the Willard law passed also a law called the Craig act, by which it was provided that any foreign insurance company desiring to do business in the State after June 1 then ensuing must become a domestic corporation of the State. There were severe penalties prescribed for the violation of the act. The company was subjected to a penalty of $200 a day for every day it "continued to operate or do business without having complied with the requirements of the act," and it was deprived of the right of suing in the state courts or to enter into any new contracts or enforce those it had made. In addition to the penalty of $200 it was subjected to a penalty of $500 for each day that it did business after the first day of June, 1899, "without first becoming a domestic corporation."

The act took effect on the tenth of February, 1899. In May of that year the board of directors of defendant passed a resolution to withdraw from the State and to dispense with and terminate the services of all of its agents. It also revoked the authority of the insurance commissioner to act as its attorney to receive service of process. A certified copy of the resolution was served on the commissioner, and the agents of the company were withdrawn from the State, the premiums upon the policies theretofore issued by it being remitted by mail to its home office, where the policies and premiums were payable, and losses upon policies being paid by check from its office. Outside of this the record shows four transactions: (1) the rewriting of a policy of insurance in 1899, originally issued in 1886, which was mailed from its office in New York; (2) sending a check in payment of a policy issued prior to May 17, 1899, to be delivered upon receipt of certain unpaid assessments; (3) the adjustment in North Carolina, in June, 1902, of a loss upon a policy issued in Washing-

ton, D. C., the beneficiary having removed to North
Carolina; (4) the adjustment, by an attorney employed
for the purpose, of a claim upon a policy written in North
Carolina prior to May 17, 1899. The first two transactions
were prior to the beginning of the actions in which the
judgments were recovered, and the last two were sub-
sequent to that time. These are the transactions upon
which plaintiff relies to establish that defendant was do-
ing business at that time in the State.

Three of the policies upon which judgments were re-
covered were issued in the State of New York long prior
to the year 1899. The fourth policy was issued in New
Jersey, also prior to 1899. The assignments to Wads-
worth were made in December, 1901, and January, 1902,
and the suits were begun on January 20, 1902.

There is no controversy over the power of the State
to pass the Willard and Craig acts so called, or to make
their provisions conditions upon which foreign insurance
corporations could do business in the State. The con-
troversy is over the duration of the conditions. The de-
cision upon that, plaintiff contends, depends upon the
question whether the insurance company was doing busi-
ness in the State at the time the actions on the policies
were brought and process served, and, insisting that it
was, cites *Connecticut Mutual Life Ins. Co.* v. *Spratley,* 172
U. S. 602; *Mutual Reserve Association* v. *Phelps,* 190
U. S. 147. Plaintiff further insists that, even it be assumed
that defendant had withdrawn from the State in good
faith and had ceased to do business therein after May 18,
1899, it was still liable to be sued in the courts of the State
"in any action or local proceeding of every nature of which
the courts of North Carolina had jurisdiction," and that
the insurance commissioner was its agent to receive serv-
ice of process. This contention is based on the provi-
sion of the statute which continues the authority of the
commissioner "in force and irrevocable so long as any

liability of said company remains outstanding in said State."

If the situation of defendant, regarding what it had done and its obligations, was exactly expressed by the contentions of plaintiff, they might be irresistible. But not only the Willard act but the Craig act must be considered in determining defendant's conduct. It had done business in the State and the former act became a part of its obligations to its policy-holders. The latter act imposed new conditions upon it, and as an alternative to compliance with them required it to remove from the State. An evasion of the requirement was, as we have seen, severely penalized. Money penalties, one of $200 and one of $500, for every day it should do business after the first of June, 1899, were imposed upon it and no contract it should make or had made could be enforced in the courts of the State. Such were the alternatives presented by the Craig act. In other words, defendant was given the choice to become a domestic corporation or go out of the State. It chose to go out of the State, and adopted the only way it could to do so. We think such course was open to it and we see no reason to question its good faith.

It is, however, contended that defendant "persisted in doing business in the State and was so found at the time of the service of process in question." Four instances are adduced to sustain the contention, two of which occurred in 1899 and two in 1902. These instances have no relation to one another and no relation to the transactions upon which the judgments were based. Between the first two and the last two there was an interval of three years, and yet it is insisted that there was such connection between them that they constituted doing business continuously in the State, and the defendant was hence precluded from revoking its power of attorney to the insurance commissioner. The contention of plaintiff, so far as based on the

instances adduced, encounters a great difficulty. They
were not new business. They related to old transactions,
and were intended only to fulfill their obligations. This
was the plain duty of defendant, a duty which it could not
evade nor could the State even prevent it. *Bedford* v.
*Eastern Building & Loan Association*, 181 U. S. 227.
Between doing business for such purposes and doing busi-
ness generally there is quite a difference. If not, the con-
sequences are somewhat serious. The Craig act, as we
have seen, imposes a penalty of $700 a day for each day
after the first day of June, 1899, that a foreign corporation
shall do business in the State without conforming to the
provisions of the act.

Plaintiff, however, presses with earnestness, in support
of his contention, the following cases: *Connecticut Mutual
Life Ins. Co.* v. *Spratley*, 172 U. S. 602; *Mutual Reserve
Fund Life Association* v. *Phelps*, 190 U. S. 147; *Mutual
Reserve Ins. Co.* v. *Birch*, 200 U. S. 612; *Commercial Mutual
Accident Co.* v. *Davis*, 213 U. S. 245.

In the *Spratley case* the life insurance policy, which was
the subject of the suit, was issued by the insurance com-
pany when it was concededly present and doing business
in the State of Tennessee. The service was upon an agent
by the name of Chaffee, sent to investigate into the cir-
cumstances of the death of Spratley and the claims of his
widow. These facts distinguish the case from the one at
bar. But certain language of the court is quoted to
establish, not only was the insurance company so doing
business in the State as to justify service of process upon
the agent appointed by the company, but doing business
generally. The court, through Mr. Justice Peckham,
said:

"We think the evidence in this case shows that the
company was doing business within the State at the time
of this service of process. From 1870 until 1894 it had
done an active business throughout the State by its agents

therein, and had issued policies of insurance upon the lives of citizens of the State. How many policies it had so issued does not appear. Its action in July, 1894, in assuming to withdraw from the State was simply a recall of its agents doing business therein, the giving of a notice to the State insurance commissioner, and a refusal to take any new risks or to issue any new policies within the State. Its outstanding policies were not affected thereby, and it continued to collect the premiums upon them and to pay the losses arising thereunder, and it was doing so at the time of the service of process upon its agent."

And further:

"It cannot be said with truth, as we think, that an insurance company does no business within a State unless it has agents therein who are continuously seeking new risks, and it is continuing to issue new policies upon such risks. Having succeeded in taking risks in the State through a number of years, it cannot be said to cease doing business therein when it ceases to obtain or ask for new risks or to issue new policies, while at the same time its old policies continue in force and the premiums thereon are continuously paid by the policy holders to an agent residing in another State, and who was once agent in the State where the policy holders resided. This action on the part of the company constitutes doing business within the State, so far as is necessary, within the meaning of the law upon this subject. And this business was continuing at the time of the service of process on Mr. Chaffee in Memphis."

This reference to the law in the State must be considered. A statute of the State provided that process might be served upon any agent of a corporation doing business in the State found within the county where the suit was brought, no matter what character of agent such person might be, and in the absence of such an agent it

should be sufficient to serve process upon any person found in the county who represented the corporation at the time of the transaction out of which the suit arose took place. It was under this statute that service was made upon Chaffee. This service was held good, this court saying, in addition to what has been quoted above: "Even though we might be unprepared to say that a service of process upon 'any agent,' found within the county, as provided in the statute, would be sufficient in the case of a foreign corporation, the question for us to decide is whether, upon the facts of this case, the service of process upon the person named was a sufficient service to give jurisdiction to the court over this corporation."

Further explanation of the language of the court is contained in the following passage:

"A vast mass of business is now done throughout the country by corporations which are chartered by States other than those in which they are transacting part of their business, and justice requires that some fair and reasonable means should exist for bringing such corporations within the jurisdiction of the courts of the State where the business was done, *out of which the dispute arises.*" (Italics ours.)

*Mutual Reserve Association* v. *Phelps* is distinguished from the case at bar by the same features that distinguish the *Spratley* case from it. The suit was brought by a citizen of the State of Kentucky upon a policy issued when the association was doing a general business in the State through regular agents under a license from the State. The commissioner subsequently cancelled its license, and it withdrew its agents from the State. The service of process in the action was nevertheless made upon the commissioner and sustained. It was stipulated by the parties that outstanding policies were continued in force after the action of the commissioner on which the association had collected and was collecting dues, premiums and assessments, and this court held, on the au-

thority of the *Spratley case*, that the association was do-
ing business in the State.   These general words must be
qualified, as we have seen, like words in the cited case
should be qualified, to protect transactions which had been
entered into and to give them the benefit of the law in
view of which they were made.   This court said: "The
plaintiff was a citizen of Kentucky, and the cause of action
arose out of transactions had between the plaintiff and
defendant while the latter was carrying on business in
the State of Kentucky under license from the State."
And it was said of the statute that it and "other kindred
statutes enacted in various States indicate the purpose
of the State that foreign corporations engaging in busi-
ness within its limits shall submit the controversies grow-
ing out of that business to its courts, and not compel a
citizen for such a controversy to seek for the purpose of
enforcing his claims the State in which the corporation
had its home."

*Mutual Reserve Life Insurance Company* v. *Birch* was a
like case.   Certain judgments which were sued on in New
York were obtained in actions upon policies issued when
the insurance company was doing its regular business in
the State of North Carolina, and antedated its resolution
to withdraw from the State.   The case was rested in the
Court of Appeals of New York on *Woodward* v. *Mutual
Life Ins. Co.*, 178 N. Y. 485, 490.   It was said in that case
that the stipulation of the company in regard to service
of process became an obligation of the company precisely
as though it "had been incorporated in the policies, and
thereafter, whether the company continued to do busi-
ness in the State or not, policy holders could commence
action by service of process upon the Secretary of State,"
subsequently changed to the insurance commissioner.
*Woodward* v. *Mutual Life Ins. Co.* was cited by this court
in its opinion sustaining the judgment in the *Birch case.*

*Commercial Mutual Accident Co.* v. *Davis* has the same

characteristics as the cases which we have reviewed and needs no other comment than that it repeated the doctrine of the other cases.

The first contention of plaintiff is, therefore, untenable. The next contention is that even f defendant did withdraw from the State in good faith the authority to the insurance commissioner to receive service of process continued as long as the company had outstanding liabilities in the State. And this, it is insisted, constituted the duration of the authority not only for causes of action arising in the State, but for causes of action arising in other States. In other words, that the language of the statute is not limited by its purpose to protect the resident policy-holders of the company, but for the benefit of every litigant upon any cause of action, and, to use the graphic language of the Court of Appeals, to "perpetuate a local forum to which under the guise of an assignment to some resident, non-residents of far distant States might flock for the purpose of instituting litigation upon contracts issued to them at their homes, against a corporation there readily subject to service and which long before had attempted in good faith to withdraw from the jurisdiction thus hunted out."

This is certainly the logical consequence of plaintiff's contention, and to sustain it he relies upon *Johnston* v. *Trade Ins. Co.*, 132 Massachusetts, 432; *Wilson* v. *Martin*, 149 *Id.* 24; *Biggs* v. *Life Association*, 128 N. C. 5. A statute like that of North Carolina was construed in the Massachusetts cases, and, therefore, the construction given to it is instructive. In all of the cases the corporation had "a domicil of business in the Commonwealth," to use the language of the Supreme Judicial Court of Massachusetts, and the court recognized that the right to sue upon cause of action arising in another State was not within "the main purpose" of the statute passed on, indeed, that it "was not framed for that purpose," but decided that

"the words 'all lawful processes in any action or proceed-
ing' must be held to include all actions which might law-
fully be brought against a company thus having a domicil
of business in this Commonwealth." In *Wilson* v. *Martin*
the contract sued on was made in the State and was to
be performed there.

In *Biggs* v. *Mutual Reserve Life Association* the policy
on which the action was based was issued to a resident of
the State. The language of the court was quite general.
The court did not discuss whether it was "'ceasing to do
business in this State' to transact that business through
agents located outside of the State, by means of the mail,"
though it may be said that the court expressed doubt of
it by referring to the *Spratley case*. It was said:

"It is sufficient to point out that the statute requires
the power of attorney to be irrevocable, not 'as long as
the company continues to do business' in this State, but
as long as 'any liability of the company remains out-
standing' in this State, and the contract with the State,
as expressed in the power of attorney filed by the com-
pany, so specifies. No amount of authorities having a
more or less fancied analogy can overcome these plain
words of the statute and of the power of attorney drawn
and filed in conformity thereto. *Green* v. *Life Association*,
105 Iowa, 628; *Insurance Co.* v. *Gillett*, 54 Maryland, 213."

This general language must be considered in reference
to the case, a conclusion which is justified by the decision
of the court in *Moore* v. *Mutual Reserve*, 129 N. C. 31,
where it is said that the State, having the right to pre-
scribe the terms upon which the insurance company might
carry on its business in the State, and the company, "be-
ing permitted, proceeded to make contracts with the citi-
zens of the State, and became liable to them under these
contracts. One of the provisions upon which the defend-
ant was allowed to do business here was that James R.
Young, insurance commissioner, and his successors in office

should be constituted its agent, upon whom service of
process might be made, and that said agency should con-
tinue so long as the defendant had any liabilities remaining
unsatisfied in this State arising from or out of its said busi-
ness of insurance." As to the revocation of the authority
of the commissioner the court said:

"It is conceded that, as a general rule, a principal has
the right to revoke a power of attorney at any time,
whether it is in terms irrevocable or not. But to this
general rule there are well-established exceptions as where
it is coupled with an interest, or where it is contractual
in its nature, given for a consideration and for the pro-
tection of some one, or some interest. In our opinion this
power falls under this exception to the general rule. It
was contractual in its nature; was given upon considera-
tion that defendant should have the right to carry on its
business in this State; and for the protection 'of those who
should deal with the' defendant."

Manifestly, this means who should deal with the de-
fendant in the State. The facts in the case at bar are
different from the cited cases. The policies upon which
the four judgments were recovered were not issued in
North Carolina, and not having been issued under the
faith of its laws are not entitled to their remedial sanc-
tion. The facts in this case are also different from those
in the Massachusetts cases. Defendant did not have "a
domicil of business" in the State, nor were the contracts
to be performed there. It in good faith withdrew from
the State—withdrew indeed under the compulsion of law.
We say under compulsion of law, for clearly the Craig
act required that as an alternative to compliance with
its provisions. It presented a choice to defendant of one
of two courses. Defendant accepted one of them; that is,
withdrew from the State, and revoked the power which
it had given to the insurance commissioner to accept
service for it. Revoked it as far as it could do so. It

could not revoke it as to any "interest or right founded or created upon faith thereof" and which "required its perpetuation and continuance," as the Court of Appeals has correctly said, and we think with that learned court, that it would be extremely inequitable to regard it as irrevocable to plaintiff and those in his situation. Indeed, it is not within the contemplation of the statute that the authority to the commissioner is to be available to those in the situation of plaintiff.

*Judgment affirmed.*