AMY SAUNDERS, Appellant, v. IOWA STATE TRAVELING MEN'S ASSOCIATION, Appellee.

No. 43301.

DECEMBER 15, 1936.

REHEARING DENIED APRIL 9, 1937.

George L. Davis and Jo R. Jaques, for appellant.

E. C. Mills and E. K. Bekman, for appellee.

RICHARDS, J.—Defendant is a mutual benefit accident association incorporated under the laws of Iowa. It has at no time sought permission to do business in any other state. Of its membership of about 70,000 approximately ten per cent reside in Iowa, three to four per cent in Missouri, the remainder in other states. Defendant issued a certificate of membership to Harry Saunders. He died February 1, 1931, allegedly as the result of an automobile accident. His wife, Amy Saunders, plaintiff in this action, was the beneficiary of the certificate. She brought suit thereon against defendant in the circuit court of Jackson County, Missouri, in which county she and her husband had been residing. The suit was commenced in February 1932. Defendant entering no appearance a judgment was rendered against it for $8,350. Upon this judgment of the Missouri court plaintiff brought an action against defendant in the district court of Wapello County, Iowa. At the close of plaintiff's evidence in the trial of the case in Wapello district court, there was a judgment for defendant upon a directed verdict, and plaintiff's appeal therefrom is the matter now before us. In directing the verdict the Wapello district court found its reasons therefor in defendant's contention that the judgment of the Missouri court was void for want of jurisdiction, and for want of the due process of law required by the Fourteenth Amendment of the Federal Constitution, in that defendant had transacted no business in Missouri of such a nature and character as to warrant an inference that it had subjected itself to the jurisdiction of the courts of that state, and in that defendant by its duly authorized

agents at no time was present in the state of Missouri where service of summons was attempted. If the Missouri court had acquired jurisdiction to render the personal judgment against defendant it was by reason of the delivering by the sheriff of the summons and the complaint in that action to Dr. Robinson, pointed out to the sheriff as the agent for the defendant. This service upon Dr. Robinson was an effort to acquire jurisdiction of defendant in the manner provided by section 5897 of the revised statutes of Missouri, 1929 (Mo. St. Ann. section 5897, p. 1683,), which reads:

"Service of summons in any action against an insurance company, not incorporated under and by virtue of the laws of this state, and not authorized to do business in this state by the superintendent of insurance, shall in addition to the mode prescribed in section 5894, be valid and legal and of the same force and effect as personal service on a private individual, if made by delivering a copy of the summons and complaint to any person within this state who shall solicit insurance on behalf of any such insurance corporation, or make any contract of insurance, or collect or receive any premium for insurance, or who adjusts or settles a loss or pays the same for such insurance corporation, or in any manner aids or assists in doing either."

Defendant, being neither incorporated under the laws of Missouri nor authorized to do business in that state, would quite evidently be amenable to service of process in the manner provided by section 5897 if a proper state of facts existed. To show such a state of facts plaintiff offered evidence tending to establish the following: That for four or five years prior to the service upon Dr. Robinson, he, as a physician, had been making for defendant all the physical examinations of persons in Kansas City having claims under certificates of membership issued by defendant; that a report to defendant was made by Dr. Robinson upon each examination; that defendant relied largely upon these reports as to the extent of the injuries sustained by such claimant, and as to the amount to be approved by defendant for settlement of such claims; that defendant's secretary, as a witness, being required to produce all letters of instruction sent to Dr. Robinson to examine claimants during the four months preceding the service of the summons, the secretary produced carbon copies of 32 such letters, each pertaining to a different

claim; that these letters follow a general form and begin with the words: "Kindly call upon and examine, in our interests, (name and address of claimant) on account of an injury sustained (date of injury);" that the letters stated the name and address of the attending physician; that each letter contained a list of previous claims made by the same claimant with the nature of the injuries and the amounts and dates of the previous claims, or stated that there had been no previous claims; that one of these letters directed Dr. Robinson to make a physical examination of one Walker; that Walker as a witness testified that, on February 8, 1932, he was examined by Dr. Robinson at Kansas City pursuant to defendant's instructions; that the matter he discussed with Dr. Robinson was his settlement, and that Dr. Robinson asked him whether he would take one hundred dollars and that he, Robinson, stated he would recommend it and that anything he recommended the company approved; that Walker further testified that he made a settlement for $100 and received a check therefor from defendant within three or four days; that he filled out some sort of a claim; that Walker testified that no other person represented or claimed to represent defendant with reference to a settlement of said claim; that witness W. N. Carter testified that as a certificate holder he made a claim against defendant for an injury prior to March 1, 1931, and that defendant directed witness to call upon Dr. Robinson in Kansas City; that this witness testified that the matter that was discussed between himself and Dr. Robinson was the settlement of his claim for injuries; that Robinson asked what the witness claimed and Robinson, being informed said it was a fair amount; that Carter testified that afterwards he received a check for the amount so discussed; that witness Charles Lott testified that in 1929 he was holder of one of defendant's membership certificates and was injured and in the hospital about six months and that Dr. Robinson came to the hospital and examined the injuries, and afterwards called at the home of the witness, in Kansas City, Missouri, looked over the injury again and wanted to know whether witness desired to make some kind of a settlement, and that Dr. Robinson asked whether he would accept six hundred dollars; the witness further testified that he replied he would not do so; that no one on behalf of defendant excepting Dr. Robinson offered to negotiate concerning the settlement and that witness subsequently sued defendant in Iowa.

Further evidence relied on. by plaintiff consists in 32 medical reports made by Dr. Robinson in response to the 32 letters of instruction. Among other things, these reports contain a diagnosis and prognosis of the injury and confidential remarks. One of these remarks states: ''This man's wound is now healed but he says he is still totally disabled. His claim is exaggerated.'' These reports also stated how the claimant was hurt, what the injury was, how long he claimed to have been disabled, or had been disabled, and the doctor's opinion as to how long he would be disabled. Some months there had been five to ten reports, other months one or two.

From the foregoing matters of evidence plaintiff claims the jury could have found properly that for a long period before the service of summons Dr. Robinson was aiding and assisting in adjusting and settling losses for defendant within the state of Missouri, and consequently the jury could find that he was an agent of defendant for the purposes of service of process within the purview of above section 5897.

In controverting plaintiff's such contention, defendant points out the following additional matters appearing in the record. Dr. Robinson received no annual or fixed retainer, but a specific fee for each examination and report; that there was no arrangement between Dr. Robinson and defendant that compelled defendant to keep him as a physician nor anything compelling Dr. Robinson to serve defendants; that Dr. Robinson was called on for services as each case arose; that defendant has sent requests for examination of claimants to Kansas City doctors other than Dr. Robinson; there was testimony that none of these doctors had any connection with the company excepting each individual transaction which was ended when it was paid for. Defendant never maintained an office excepting in Des Moines where its business is transacted and employs no agents. It is shown that its practice has been to send circulars to prospects and to its members in Missouri and other states with blank applications for membership; that applications for membership reach the Des Moines office, usually by mail, at which place the application is approved or rejected and if approved the certificate is mailed at Des Moines to the accepted member; that authority to approve applications is vested solely in defendant's board of directors at Des Moines; that defendant does not maintain any offices or general agencies in any state other than Iowa; that

defendant has no property in Missouri; that defendant employs no agents to secure new members but gives mementos or presents to persons securing new members, such as bill-folds, pen, pencil or knife; that all premiums are payable to defendant at its Des Moines office; that there was testimony to effect that the examining doctors have no power to settle claims or solicit insurance; that all premiums are payable at the Des Moines office; that Dr. Robinson testified that he had no authority to make an examination without special request from the defendant, and that he never had anything to do with settling losses.

The question, whether in its application to this case above quoted section 5897 exhibits an exercise of legislative powers within the lawful bounds of due process of law, is not before us because not raised in brief points or arguments. The points that are relied on by defendant as warranting the court in directing the verdict may be thus stated: That defendant was not doing business in Missouri in such a way as to subject it to process in that state under section 5897, and that there was no agent of defendant in Missouri upon whom service of process could be made.

To show "doing business" by defendant in Missouri, plaintiff points out that of defendant's members a large number, probably between two thousand and three thousand, resided in Missouri, from whom assessments were being derived, and to whom losses were being paid, and that defendant had engaged in acquiring this membership by circularizing prospects and sending out blank applications. But the record is that in acquiring these members defendant had no agents present in Missouri procuring applications, and the evidence compels the finding that the agreement incidental to each membership was a contract executed in Iowa and to be performed in Iowa, including the payment of assessments and of indemnities. It cannot be that the volume of the transactions with persons in Missouri affects the fact that each individual relationship between defendant and its members had the characteristics pointed out. We are of the opinion that the existence of these many membership certificates in Missouri, each being a contract made in and to be performed in Iowa, was not itself sufficient to establish that defendant was doing business in Missouri. This we think finds support in following authorities. In Minnesota Commercial Men's Assn. v.

Benn, 261 U. S. 140, 43 S. Ct. 293, 295, 67 L. Ed. 573, in a similar state of facts, the court said:

"It also seems sufficiently clear from Allgeyer v. Louisiana, 165 U. S. 578, 17 S. Ct. 427, 41 L. Ed. 832; Hunter v. Mutual Reserve Life Insurance Co. [218 U. S. 573, 31 S. Ct. 127, 54 L. Ed. 1155, 30 L. R. A. (N. S.) 686], supra, and Provident Savings Society v. Kentucky [239 U. S. 103, 36 S. Ct. 34, 60 L. Ed. 167, L. R. A. 1916C, 572], supra, that an insurance corporation is not doing business within a state merely because it insures lives of persons living therein, mails notices addressed to beneficiaries at their homes and pays losses by checks from its home office. See, also, Pembleton v. Ill. Comm. Men's Assn., 289 Ill. 99, 124 N. E. 355."

And the opinion contains the following:

"Considering what this court held in [citing cases] we think it cannot be said that the association was doing business in Montana merely because one or more members, without authority to obligate it, solicited new members. That is not enough—'to warrant the inference that the corporation has subjected itself to the local jurisdiction, and is by its duly authorized officers or agents present within the state or district where service is attempted.' Peoples Tob. Co. v. Am. Tob. Co., supra, 246 U. S. [79] 87, 38 S. Ct. [233] 235, 62 L. Ed. 587, Ann. Cas. 1918C, 537."

Oliver v. Iowa State Trav. Men's Assn., (C. C. A.) 76 Fed. (2d) 963, holds defendant was not doing business in Texas under a similar state of facts. Stier v. Iowa St. Trav. Men's Assn., 199 Iowa 118, 201 N. W. 328, 330, 59 A. L. R. 1384, was an action brought upon a judgment rendered in a Missouri court. In reliance upon the same Missouri statute involved in this case, the service of summons had been made upon one Dr. Bohan, who had been examining claimants in Missouri for several years for the defendant largely in same manner as Dr. Robinson was doing. The facts in the Stier case quite generally parallel those in the instant case excepting that there was no evidence of the same nature as the above stated testimony of witnesses Walker, Carter and Lott, and there is no showing in the Stier case that Dr. Bohan received from defendant information regarding prior claims, if any, made by the person to be examined. In the Stier

case the defendant denied that the Missouri court acquired jurisdiction by service of summons on Dr. Bohan because he was not its agent, and alleged that defendant was not transacting business in the state of Missouri and that the Missouri judgment was wanting in due process of law. It was claimed by plaintiff that the judgment was conclusive and the sheriff's return unimpeachable. Quoting from the opinion:

"Without a restatement of the facts, it is clear that defendant did not have an office or place of business in Missouri, and that Dr. Bohan does not come within any of the provisions of the Missouri statutes. He was not an agent contemplated as one upon whom service of summons might be had. We do not understand appellant to claim that he was. The claim is that, under the statutes and decisions of the courts of Missouri, the return of the sheriff is, nevertheless, conclusive." There is this further expression in the opinion: "To the point that the defendant was not engaged in the carrying on of business in the state of Missouri, and that Dr. Bohan was not its agent, nor in charge of its business office, appellee cites the following cases: Minnesota Com. Men's Assn. v. Benn, 261 U. S. 140, 43 S. Ct. 293, 67 L. Ed. 573 [and other cases]."

The court, holding that the sheriff's returns were not conclusive, affirmed the judgment of the lower court which held the Missouri judgment void for want of legal service of process on defendant.

In support of the proposition that defendant was doing business in Missouri, and that Dr. Robinson was its agent in said business, on whom process could be served, plaintiff urges a further contention not found in the Stier case. It is based on the testimony of witnesses Walker, Carter and Lott, and on the information as to any prior claims, in the letters to Dr. Robinson. Plaintiff's argument is that, from the testimony of these witnesses, a jury could find that Dr. Robinson was a person within the state who was aiding or assisting in adjusting or settling losses for defendant, within the purview of the language of section 5897. The testimony of Walker pertains to a transaction on February 8, 1932, ten days prior to the service of summons on Dr. Robinson. The testimony of Carter has to do with a claim made in March 1931, and the testimony of Lott concerns a claim made by him in 1929. Among the authorities cited by

plaintiff to support her argument the case of Commercial Mut. Acct. Co. v. Davis, 213 U. S. 245, 29 S. Ct. 445, 448, 53 L. Ed. 782, is typical. This Commercial Mutual Accident Company, not incorporated in Missouri, had sent into that state one Mason with authority to adjust and settle a claim that was being made against the accident company by one Davis. Relying upon the same Missouri statute that is involved in the case at bar, Davis caused summons to be served upon Mason as agent of the company while Mason was in Missouri on his mission. The opinion states:

"When the company sent such an agent into Missouri, by force of the statute he is presumed to represent the company for the purpose of service, and to be vested with authority in respect to such service so far as to make it known to the foreign corporation thus coming within the state and subjecting itself to its laws." The court also said: "We think the state did not exceed its power and did no injustice to the corporation by requiring that, when it clothed an agent with authority to adjust and settle the loss, such agent should be competent to receive notice, for the company, of an action concerning the same."

It will be noted that in the Davis case process was served upon the agent during the time he was present in Missouri vested with authority to transact the business of settling the identical claim to litigate which summons was served upon him. There is a distinction between such a situation and that in the case at bar, in that Dr. Robinson was not shown to have been in the performance of any duties nor vested with any authority with respect to the claims of Walker, Carter, Lott or plaintiff, or of any other certificate holder, at the time of service of summons. As a consequence we are unable to agree that the Davis case controls, because in the case before us the evidence of these witnesses does not warrant holding that *at the time of the service* upon Dr. Robinson the defendant by its alleged agent Robinson was present, doing business within the state where the service was attempted. It is the general rule that the business must be of such a nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction, and is by its duly authorized officers or agents present within the state where service is attempted. Consolidated Textile Corp. v. Gregory, 289 U. S. 85, 53 S. Ct. 529, 77 L. Ed. 1047. It appears

to us that the transactions with Walker, Carter and Lott, even if it were conceded that the transactions established that in these instances Dr. Robinson was aiding or assisting in adjusting or settling losses, fail to establish "doing business" by defendant involving its presence in Missouri *at the time* of the service of the summons on Dr. Robinson. Plaintiff urges that such conclusion is untenable on account of the holding in Fred Miller Brewing Co. v. Insurance Co., 95 Iowa 31, 40, 63 N. W. 565, 568, which was an action upon a judgment rendered in a Wisconsin court on account of loss by fire of property in Wisconsin insured under a policy issued by defendant to a resident of Wisconsin. The defendant was an Iowa corporation, without authority to transact business in Wisconsin. The summons was served in Wisconsin on one Winchester pursuant to a Wisconsin statute providing that when an action is against an insurance corporation, not organized under the laws of Wisconsin, the summons may be served upon whoever solicits insurance on behalf of an insurance corporation or property owner * * * or collects any premium, etc. This court held that Winchester was defendant's agent within the definition of the Wisconsin statute and that jurisdiction of defendant was obtained. But the defendant raised the further contention that even if the agency of Winchester was established, yet it was *not continuing,* and that there was no authority to serve the summons upon Winchester when service was attempted a year and a half after the policy was issued. Upon this question the court said:

"A statute of Wisconsin provides that the summons in an action against an insurance company not organized under the laws of that state may be served on 'any agent of such corporation, within the definition of section 1977, in the state.' * * * Winchester was an agent, within the definition of that section, in the issuing the policy in question, 'to all intents and purposes.' Those purposes included being served with a summons in an action on the policy."

From this authority plaintiff says it follows that in the case at bar service upon Dr. Robinson was sufficient although subsequent to the transactions involved in the testimony of Walker, Carter and Lott. But plaintiff overlooks the fact that the holding in the Brewing Co. case recognizes that at the time the policy was written the Wisconsin statute fixed the specific means

of service of process upon the agent Winchester, and this became a part of the obligations of the insurance company under the policy to its policy holder. The same principle is applied in Hunter v. Mut. Res. Ins. Co., 218 U. S. 573, 31 S. Ct. 127, 54 L. Ed. 1155, 30 L. R. A. (N. S.) 686. Quite different was the alleged agency of Dr. Robinson in the matters related by Walker, Carter, and Lott. In the Brewing Co. case the insurance company was doing business in Wisconsin, within the meaning of its laws, when it issued the policy of insurance for delivery in that state on property therein located. It was the Wisconsin statute, fixing the right of the insured to serve process on the company's agent who represented it in the making of the insurance contract, that imposed a corresponding obligation on the company under its policy to respond to such service of summons. But in the case at bar there is nothing in the record to support any theory that provisions of the Missouri statutes were contemplated by the parties to the insurance contract as entering thereinto or as imposing any specific obligations on the company, as in the Brewing Co. case. This is because it cannot be said on the record that the contract was executed in Missouri. It is not even shown that the insured was a resident of Missouri when he procured his membership certificate. There having been created in the insurance contract no obligation on defendant to submit itself to any specific method of service of process in Missouri, it would seem to follow that if defendant on occasions voluntarily entered Missouri, by doing business of a temporary character through an agent, its right to depart from that state by concluding the business was not impeded by any duty owing plaintiff. There seems to be no foundation on which to rest a holding that defendant was under obligation to plaintiff to remain in the state for the purpose of service of process after the three alleged instances of doing business, not associated with plaintiff or her decedent, had terminated.

There remains for discussion a matter of evidence not considered in arriving at the foregoing conclusion. Reference is to the fact that in each letter of instructions from defendant to Dr. Robinson there was related the dates and amounts of all claims the person to be examined had previously made against defendant, together with the nature of the claimant's injuries. Plaintiff argues that this evidence, associated with the large number of examinations made by Dr. Robinson over a period of years,

and associated with the testimony of Walker, Carter and Lott, was sufficient to generate a jury question whether defendant had covertly engaged Dr. Robinson to aid or assist generally in adjusting or settling the claims against defendant arising in Kansas City. Plaintiff claims that if such arrangement existed it would be in its nature a continuous and constant presence of defendant's agent, Dr. Robinson, in Missouri, though the occasions of rendering assistance were intermittent, as would be the service of a resident agent soliciting insurance as prospects might be discovered. Plaintiff urges that such continuous presence in Missouri of the agent, Dr. Robinson, warranted the service of summons as made in this case, though the agent was not actually examining any claimant on the day of the service.

In Joyce Company v. Rohan, 134 Iowa 12, 111 N. W. 319, 120 Am. St. Rep. 410, it is stated to be a general rule of law that whatever evidence has a tendency to prove an agency is admissible even though it be not full and satisfactory, and it is the province of the jury to pass upon it. But applying this rule, we have much difficulty in looking on the information in the letters as having a tendency to prove a continuous agency, though this information be considered in connection with plaintiff's other testimony. The necessity that such information be in the medical examiner's hands, as a safeguard against any persons engaged in making baseless or manufactured claims against defendant, is so apparent and fundamental, that it would seem to render quite remote and captious the inference suggested by plaintiff. The information in the letters appeals to plaintiff as a suspicious circumstance, but we are unable to hold that it rises to the dignity of evidence tending to prove a continuous agency, and its weight, if any, in establishing plaintiff's inference, is too negligible to warrant a holding that the district court erred in directing the verdict.

For the reasons indicated the Missouri court did not acquire jurisdiction of defendant. There are authorities with which this opinion does not accord, but our conclusion follows previous pronouncements of this court, and other authorities that appeal to us as well reasoned and sound. We think too our conclusion does no violence to the general purposes of statutes such as above quoted section 5897. That is, running through the opinions of many courts is found the thought that a vast amount of business is now being done by corporations chartered in states other than

those in which they are transacting a part of their business, and justice requires that some fair and reasonable means should exist for bringing such corporations within the jurisdiction of the courts of the state *where the business was done out of which the dispute arises.* The reason we think our conclusion does no violence to this general purpose is the fact that in this case the insurance contract was not made in Missouri nor does it even appear that the insured was a resident of that state when the contract originated.

The judgment of the district court is affirmed.—Affirmed.

ALBERT, KINTZINGER, DONEGAN, and STIGER, JJ., concur.

MITCHELL, ANDERSON, and HAMILTON, JJ., dissent.

MITCHELL, J. (dissenting)—I find myself unable to agree with the majority opinion, and therefore respectfully dissent.

I. Was the Iowa State Traveling Men's Association doing business within the state of Missouri? That is the first question that confronts us. Let us look at the record.

According to the testimony of the secretary of the association, they have a total membership of about 70,000, and three per cent of these members live in the state of Missouri, or, in other words, they have more than two thousand policyholders in that state. How is this business secured? By sending letters to certain classes of people—such as attorneys—in which letters they set up the cost of the insurance, a list of the claims they have paid during the preceding month, and an application blank. Then, when they secure a member they send him a letter, inclosing an application blank, in which letter they urge him to secure another member, and, if he secures a member, he is given some kind of a present; it may be a bill-fold, a pen, pencil, or knife. His compensation for securing the member is some article which they list. Thru this procedure they have built up this large list of policyholders in the state of Missouri. They collect premiums from the membership, sending them notice of the amount of the premium due. When they have a claim they send a letter to some doctor and ask him to examine the claimant and make a report upon a special form that the association has. Yet, it is the claim of the association, in the face of such a record, and it is the holding of the majority, that this association is not doing business in the state of Missouri.

The Supreme Court of the United States had this question before it in the case of Commercial Mutual Accident Company v. Davis, 213 U. S. 245, on page 255, 29 S. Ct. 445, 448, 53 L. Ed. 782, and that court said:

"Was the defendant doing business in the State of Missouri? The record discloses, and the court has found, that it had other insurance policies outstanding in the State of Missouri. Upon these policies undoubtedly premiums were paid, and it was the right of the company to investigate losses thereunder, to have an examination of the body of the deceased in proper cases, and to do whatever might be necessary to an adjustment or payment of any loss. The record shows that the company sent Dr. Mason to Fayette to investigate the loss sued for in this case, and later, and at the time of the service of the process, Mason was in Missouri with full authority to settle the loss in controversy.

"Previous cases in this court have not defined the extent of the business necessary to the presence of a foreign corporation in the state for the purpose of a valid service; it is sufficient if it is doing business therein. We are of the opinion that the finding of the court in this case is supported by testimony, and that the corporation was doing business in Missouri."

The Nebraska court had this question before it in the case of Tomson v. Iowa State Traveling Men's Association, reported in 88 Neb. 399, 129 N. W. 529. At page 530 that court said:

"The second contention of defendant that the company was not doing business in Nebraska is equally untenable. Among the exhibits introduced in evidence upon the hearing of the objection to jurisdiction were the twenty-third and twenty-fourth annual reports of defendant company. The former shows that during the year from December 6, 1902, to December 5, 1903, the defendant paid accident claims to 50 Nebraska certificate holders, and the latter shows that for the next year it paid accident claims to an additional 50 residents of Nebraska. If the company were doing so fortunate a business that the assessments upon each member amounted to only $9 per year, as stated in their numerous circulars introduced in evidence, and they paid 100 accident claims in two years, it is quite apparent that it must have a large membership in this state; for it is a matter of

common knowledge that only a small percentage of persons carrying accident insurance are ever so unfortunate as to be called upon to present claims against the companies in which they are insured. In the light of this record we think it is a juggling of terms to claim that the company is not doing business in Nebraska, simply because, in violation of our statutes, it has never complied with the law by regularly appointing agents to represent it in this state. In Deere Plow Co. v. Wyland, 69 Kans. 255, 76 Pac. 863 [2 Ann. Cas. 304], the first paragraph of the syllabus reads:

" 'A single transaction by a foreign corporation may constitute a doing of business in this state within the meaning of section 1283, Gen. St. 1901, making certain requirements of foreign corporations doing business in the state, where such transaction is a part of the ordinary business of the corporation, and indicates a purpose to carry on a substantial part of its dealings here.' See, also, Pennsylvania L. M. F. Ins. Co. v. Meyer, 197 U. S. 407, 25 S. Ct. 483, 49 L. Ed. 810."

In the majority opinion is cited the case of Minnesota Commercial Men's Association v. Benn, reported in 261 U. S. 140, 43 S. Ct. 293, 67 L. Ed. 573. It seems to me, however, the record in this case is different than in the case cited. In the case at bar they had over two thousand policyholders in the state of Missouri. They sent application blanks to their members, urging them to secure other members, and if they did so, paid them for that work by forwarding to them a bill-fold, a knife or pen. It adjusted losses in the state of Missouri. It hired doctors to examine the claimants. It paid a large number of losses. In the case at bar we have the sworn evidence of witnesses who had claims against this association, and settlement of those claims, under the testimony, was made thru Dr. Robinson, the physician designated by the association. True, he is a doctor, but he can also be a claim adjuster. His knowledge of the medical profession does not interfere with his ability to settle claims. In the Benn case there was no such evidence.

It would seem to me, in the words of the Nebraska court, to be a "juggling of terms" to claim that the association is not doing business in Missouri simply because, in the violation of the statutes of that state, it has never complied with the laws of that state.

II. The next question that confronts us is whether or not the person upon whom service was made, was a proper party, within the contemplation of the statutes of the state of Missouri. The legislature of that state properly saw fit to protect the citizens of Missouri by passing section 5897 of the Revised Statutes of 1929 (Mo. St. Ann., sec. 5897, p. 1683), which is set out in full in the majority's opinion. Certainly, no one would argue but that it was unreasonable to expect these citizens of Missouri to be forced to come to Iowa to litigate claims that they had against this association, and to prevent this hardship upon its citizens the statute above referred to was passed. Service in the case at bar was made upon Dr. Robinson. It is true, he is a physician, but, in addition to this, he assisted in the adjustment of claims in that state. There is sworn evidence of witnesses who were policyholders in the association, that they received a letter from the association, directing them to go to the office of Dr. Robinson and that he would there examine their injury; that, in addition to the examination they discussed with him the question of settlement. One of these witnesses testified that the doctor asked him if he would take $100 as a settlement and told him that "he would recommend it and anything he recommended the company approved." This witness received the $100 in settlement of his claim. The doctor made out reports which contained the name and address, and occupation, of the claimant, at the time of the accident, the manner in which the accident happened, condition of the claimant, and finally, the confidential remarks in regard to the claim. In addition to this, we have the testimony of the secretary of the association as follows:

"In the event of a claim being filed against our company, or presented to our company by any member of the association, we did not send investigators from Iowa to the place where the person lived. We rely upon the report of our local examiner and physician; that is true as to our dealings in the State of Missouri and around Kansas City."

Dr. Robinson examined a large number of claimants each month and had been doing so for a period of years for this association.

In view of this record it seems to me that Dr. Robinson came within section 5897 of the Revised Statutes of Missouri, which provides that service may be made on any person who

adjusts or settles a loss or pays the same for such insurance corporation, or in any manner aids or assists in doing either. If he didn't have authority to settle and adjust losses, no one can say, in the face of this record, that he did not aid and assist in the settling and adjusting of losses. And, as he was engaged in that business for this association, service upon him was a proper service and the Missouri court had jurisdiction to enter the judgment.

The majority say:

"There are authorities with which this opinion does not accord, but our conclusion follows previous pronouncements of this court, and other authorities that appeal to us as well reasoned and sound."

I cannot agree that there are pronouncements of our court that sustain the contention of the majority, but, if there are, I would overrule these pronouncements, for it seems to me the better weight of authority holds the contrary view to that expressed in the majority's opinion. I would reverse the case.

ANDERSON and HAMILTON, JJ., authorize me to state that they join in this dissent.