HAGLER et al. v. SECURITY MUT. LIFE INS. CO.

(District Court, N. D. Texas. June 11, 1917.)

No. 697.

1. INSURANCE ⊂⊃18—FOREIGN INSURANCE COMPANIES—RIGHT TO DO BUSINESS—CONDITIONS.

A state may impose upon a nonresident life insurance company such conditions precedent to its doing business in the state as it may see fit; and hence statutory provisions requiring the filing of a power of attorney authorizing service on any agent, officer or representative, and providing for service upon any person holding a power of attorney, or by publication, if no such person could be found, are valid and binding on such company.

2. INSURANCE ⊂⊃26—FOREIGN INSURANCE COMPANIES—SERVICE OF PROCESS.

Under Rev. St. Tex. 1895, art. 3064, requiring insurance companies desiring to do business in the state to file a power of attorney authorizing each agent to accept service of process, and consenting that such service shall be valid; article 3070, providing that process might be served upon any person in the state holding a power of attorney, and that if no such person could be found process might be served by publication; and Sayles' Ann. Civ. St. Supp. 1904, art. 3096ee, making the two articles mentioned conditions upon which foreign insurance companies were permitted to do business in the state, and providing that any such company engaged in issuing policies should be held to have assented thereto as a condition precedent to its right to engage in such business—the revocation by a foreign insurance company of a power of attorney to one of its agents, without the appointment at the same time of any successor, was illegal, and service on such agent was good, especially where the power of attorney was revoked after suit was filed, and seemingly for the express purpose of preventing service on him.

3. INSURANCE ⊂⊃16—FOREIGN INSURANCE COMPANIES—DOING BUSINESS—WHAT CONSTITUTES.

Where, though a foreign insurance company attempted to formally withdraw from a state, it continued to collect premiums on outstanding policies numbering, in 1907, 1,143, and 682 in 1915, and representing insurance aggregating over $2,000,000 on the first date, and over $1,000,000 in 1915, their collection constituted the doing of business in the state.

4. INSURANCE ⊂⊃26—FOREIGN INSURANCE COMPANIES—SERVICE BY PUBLICATION.

Under Rev. St. Tex. 1895, art. 3070, and Sayles' Ann. Civ. St. Supp. 1904, art. 3096ee, if a foreign insurance company's revocation of powers of attorney to its agents defeated service of process on them, then as it had no agent in the state, service by publication was valid, as a stipulation to this effect in the policy would have been binding, and the existing statutes must be read into the policy.

5. STATUTES ⊂⊃225¼—CONSTRUCTION—CONSTRUING STATUTES TOGETHER.

Acts Tex. 31st Leg. c. 108, regulating domestic and foreign insurance companies, and expressly repealing prior statutes relating to service of process, must be construed with the act of 1909, requiring all foreign insurance companies to appoint the commissioner of insurance as their agent for the service of legal process, where the two acts were pending at the same time, and the last-mentioned act, though approved a few days after the first one, went into immediate effect more than two months before the first act was effective.

6. INSURANCE ⊂⊃26—FOREIGN INSURANCE COMPANIES—SERVICE OF PROCESS.

In view of Acts 31st Leg. c. 108, requiring foreign insurance companies to appoint the commissioner of insurance as their agent for the

service of legal process, act of 1909, repealing prior statutes as to the service of process, did not cancel outstanding powers of attorney authorizing a foreign insurance company's agent to receive service of process until such company in lieu thereof gave new powers of attorney to the insurance commissioner.

7. CONSTITUTIONAL LAW ⬳106, 173—INSURANCE ⬳18—OBLIGATION OF CONTRACTS—SERVICE OF PROCESS.

If the Legislature intended to cancel such outstanding powers of attorney, the act was unconstitutional as divesting vested rights and impairing the obligation of contracts, since while the Legislature may make any change it sees fit pertaining to the remedy, the manner of obtaining service, or the procedure at the trial, it cannot deprive plaintiffs altogether of any remedy by divesting the courts of jurisdiction which they had at the time the policies were written.

At Law.  Consolidated actions by David S. Hagler and others against the Security Mutual Life Insurance Company.  On motions to quash the service of summons.  Overruled.

Plaintiffs, administrators of John S. Hagler, deceased, brought two suits in the state court, thereafter removed to this court and consolidated, against the Security Mutual Life Insurance Company, a corporation chartered under the laws of the state of New York, and having its principal offices in the city of Binghamton, said state, to recover $10,000 on an insurance policy issued by said company on the life of the said John S. Hagler, October 3, 1904. Service was had on alleged agents of defendant company, and by publication, which process the defendant has moved to quash, alleging that the parties served were not its agents for the purpose of citation, and, being a nonresident corporation, it could not be brought into court by publication of citation.

At the time of the issuance of the policy the defendant was doing business in the state of Texas, where the policy to Hagler was solicited and delivered. It has since then withdrawn from the state and is soliciting no further business in Texas.

At the time defendant began to do business in Texas, and prior to the issuance of the policy to Hagler in 1904, article 3064 of the Revised Statutes of 1895 was in force, and provided that insurance companies desiring to do business in the state should file with the commissioner of insurance a power of attorney, authorizing each of its agents, officers, and representatives in the state to accept service of any civil process, and consenting that such service of process should be valid.  Article 3070 of the Rev. Stat. of 1895 provided that suits might be instituted against any life insurance company in any county where the loss occurred, or where the policy holder resided, and that the process in such a suit might be served upon any person in the state holding a power of attorney from such company, and that if no such person could be found, upon affidavit of that fact being filed, process might be served by publication.  By a statute enacted in 1903 (article 3096ee, Sayles' Civil Statutes Supp. 1904), the provisions of the two foregoing articles were made conditions upon which foreign insurance companies were permitted to do business in the state; and it was further provided that any such foreign corporation which engaged in issuing insurance contracts or policies in the state should be held to have assented thereto as a condition precedent to its right to engage in such business.

Agreeably to the foregoing provisions of law, the defendant company on October 3, 1904, filed with the insurance commissioner of the state of Texas a resolution providing that each and every agent appointed by the company in Texas was authorized to acknowledge legal process for the company, and that legal process might be executed on any one of said agents; and further providing that the company did thereby consent that suit might be commenced against it in any county in the state in which loss occurred or in which any agent of the company might reside.  Finally, the resolution specifically appointed J. W. McCracken of Ft. Worth, Tex., as its agent for the said state

of Texas for service of legal process. On the very day that this power of attorney was filed, October 3, 1904, the company issued to Hagler, upon an application solicited by the said McCracken, the policy herein sued on.

A few months thereafter the defendant company formally withdrew from Texas, and, effective July 10, 1907, revoked by resolution the power of attorney for the service of process given to McCracken, and appointed Alex. S. Coke, of Dallas, as its attorney in Texas to accept and acknowledge service of legal process "in any cause or causes of action originating in any way prior to the 10th day of July, 1907, or hereafter growing out of any policy contract issued by this company prior to July 10, 1907, but not thereafter. The service upon or acceptance by said Alex. S. Coke of any and all such legal process to be strictly limited as hereinbefore stated." A copy of this resolution was sent to the commissioner of insurance, but, under the advice of the attorney general of the state, he refused to accept and file the same.

No legal proceedings were taken by the defendant company to mandamus the commissioner to receive and file the resolution canceling the old power of attorney and making a new one. The commissioner did, however, file a letter from defendant company giving notice of its withdrawal. See Exhibits Y and A.

After the withdrawal of the defendant company, the Legislature, in 1909, enacted a statute providing that each life insurance company engaged in doing, or desiring to do, business in the state should file with the commissioner of insurance and banking an irrevocable power of attorney, duly appointing said commissioner and his successors in office its agent and attorney in fact for the purpose of accepting service or being served with citations, and consenting that such service should be held valid, such appointment to continue in force so long as said company should continue to do business in the state or to collect premiums from citizens of the state, and so long as it should have outstanding policies in the state, and until all claims of every character held by the citizens of the state or by the state of Texas against such company should have been settled. The defendant company filed no power of attorney under the provisions of this act.

On August 6, 1913, the first of these suits was filed, and service had by publication, plaintiff having failed to find an agent of the defendant upon whom service might be made. Later, McCracken was located and service made on him. He immediately mailed the citation to the defendant company in ample time for it to have answered. On the same day that McCracken was served service was also had on the commissioner of insurance and banking, who at once mailed the citation and amended petition to defendant company.

The case was removed to this court, and a motion filed to quash the service, in which it was alleged that in June, 1907, defendant wholly withdrew from the state of Texas, then terminating its agency therein, and revoked, by resolution of the board of directors, its power of attorney to McCracken and all other agents, who were promptly notified of such action, as was likewise the commissioner of insurance; that prior to July 10, 1907, all of its agents in the state of Texas had been withdrawn, and since that date defendant had done no business in the state of Texas, nor had it had the legal right to do any business therein; that at the date of the institution of the suit it was, and still is, a corporation organized under the laws of New York, with its offices in Binghamton, said state, of which it is a citizen, and a nonresident of the state of Texas, in which latter state it has no property and had none when the suit was instituted; that the service on defendant by publication was ineffectual and void, as was likewise the service on McCracken, whose power of attorney had been canceled prior to such service, and that the service on the insurance commissioner was likewise illegal, inasmuch as he was not the agent or representative of defendant. Thereafter, on April 28, 1914, plaintiffs filed another suit in the state court on the same cause of action, with similar allegations as in the first, and, in addition thereto, substantially alleged the facts as set up in defendant's motion to quash the service in the first suit, and further alleged the appointment of Alex. S. Coke as its attorney for service of process by resolution, which resolution the insurance com-

missioner had refused to receive and file, and that the power of attorney to Coke was revoked in March, 1914, leaving the defendant company without any agent in Texas upon whom service could be had. The prayer was for service by publication, which was made, and, in addition thereto, service was also later made on the said Coke.

This second suit was likewise removed to this court, and defendant filed exceptions to the citation by publication similar to that filed in the first suit, and likewise filed an affidavit by Coke to the effect that his power of attorney had been canceled and notice given him of that fact prior to the time of service on him. The two suits were consolidated for the purpose of trial.

Flournoy, Smith & Storer, of Ft. Worth, Tex., for plaintiffs.
Coke & Coke, of Dallas, Tex., for defendant.

JACK, District Judge (after stating the facts as above). [1] The defendant being a nonresident life insurance company, the state of Texas had the right to impose upon it, as a condition precedent to its doing business in the state, such conditions as it might see fit. There- fore the provisions of the then existing law were valid and binding on defendant. Process was served on McCracken, who had been appoint- ed agent of defendant company, in compliance with the law, at the time it obtained permission to do business in the state.

It is true that prior to the filing of the suit defendant company had passed resolutions, which it mailed to the commissioner of insurance, revoking the power of attorney to McCracken, and appointing Coke agent for the service of process under certain conditions; but the com- missioner, acting under advice of the attorney general, had refused to file same, and no legal proceedings, by mandamus or otherwise, were ever taken to force him to do so. Thus McCracken, on the public rec- ords, remained the duly authorized agent of defendant company for the service of process.

[2] Even should it be conceded that the revocation of the power of attorney to McCracken, and the appointment of Coke in his stead, was legal and effective, then the final revocation of the power of attorney to Coke, without the appointment at the same time of a successor to him as agent for the company, would not have been legal, and the serv- ice thereafter made in the second suit on Coke would have been good; or, if the revocation of the power of attorney to Coke was legal, then the service of process by publication, the company having no agent in the state, would have been valid and binding.

The purpose and policy of the law, requiring foreign insurance com- panies to name an agent in the state for the purpose of process, is clearly to furnish a means by which the insurance companies soliciting and writing policies in the state may, at all times, be forced to comply with their obligations to policy holders in the state, without the latter having to go to another state to sue.

The statutes as they then existed must be read into the policy, and the giving of the power of attorney held irrevocable, unless, at the same time, a new agent was appointed, or other means provided to give the state courts jurisdiction.

In the case of United States Life Insurance Co. v. Ross (Court of Appeals, 5th Circuit) 102 Fed. 722, 42 C. C. A. 601, which was a Texas case arising under the same statutes, the court held such a power

of attorney irrevocable, unless, at the time of the revocation, a new agent was appointed. In that case the defendant, on the termination of its contract with one of its agents, canceled its power of attorney and gave due notice thereof to the insurance commissioner, who assented thereto, but subsequently wrote the company that the attorney general had rendered an opinion to the effect that the company had no right to so cancel its power of attorney, and he would be governed accordingly. Later the company appointed the insurance commissioner its agent for the purpose of citation, but in the meantime notice had been served on the agent of the company of the taking of depositions, and the question of the validity of the service of notice came up in determining the admissibility of the depositions. Judge McCormick, organ of the court, held:

"In the nature of the case, the appointee, while still alive and capable of being reached, must continue to be competent to have such service made on him until a successor is appointed and has qualified by acceptance. Therefore the fact that the agreement between the plaintiff in error and J. W. Harris terminated, according to its terms, on the 9th of September, 1897, does not necessarily involve or affect that representative capacity in which he was authorized to accept service of legal process, or at least to have service made upon him agreeably to the terms of the statutes of Texas for the protection of the citizens of Texas who held policies of insurance issued by the plaintiff in error, then doing business under and subject to the terms of its permission in that state. One of the vital conditions precedent to obtaining and using such permission was and is that the licensee should have and keep in that state such a representative by whom service could be accepted or upon whom it could be had. We think the commissioner decided, justly and wisely, that the plaintiff in error could not revoke the authority it had granted without substituting another appointee by whom service could be accepted, or on whom it could be made, so as to bind the licensee."

It is true that the Texas statute quoted did not provide that such power of attorney should be irrevocable. This, however, was not sacramental. As a general rule, the principal has the right to revoke the power of attorney at any time, even though it be in its terms irrevocable, subject to the exception that, where the power of attorney is coupled with an interest, or contractual in its nature, or given for a consideration, and for the protection of some one or some interest, as was the case in this instance, it is not revocable at will. Hunter v. Mutual Reserve Life Ins. Co., 218 U. S. 590, 31 Sup. Ct. 127, 54 L. Ed. 1155, 30 L. R. A. (N. S.) 686.

[3] Notwithstanding the defendant withdrew from business so far as writing new policies was concerned, it continued to collect premiums on the policies outstanding. The number of policies in force the last of the year 1907 was 1,143, and the amount of insurance $2,649,-606, and the number of policies still outstanding October 1, 1915, was 682, and the amount of insurance $1,399,114. The premiums on this amount of insurance were a substantial amount, and their collection constituted doing business within the state.

In Connecticut Mutual Life Ins. Co. v. Spratley, 172 U. S. 602, 19 Sup. Ct. 308, 43 L. Ed. 569, the court said:

"It cannot be said with truth, as we think, that an insurance company does no business within a state unless it has agents therein who are continuously seeking new risks and it is continuing to issue new policies upon such risks.

Having succeeded in taking risks in the state through a number of years, it cannot be said to cease doing business therein when it ceases to obtain or ask for new risks or to issue new policies, while at the same time its old policies continue in force, and the premiums thereon are continuously paid by the policy holders to an agent residing in another state, and who was once the agent in the state where the policy holders resided. This action on the part of the company constitutes doing business within the state, so far as is necessary, within the meaning of the law upon this subject."

The same doctrine was again affirmed in Mutual Reserve Fund Life Ass'n v. Phelps, 190 U. S. 147, 23 Sup. Ct. 707, 47 L. Ed. 987; Mutual Reserve Life Ins. Co. v. Birch, 200 U. S. 612, 26 Sup. Ct. 752, 50 L. Ed. 620; Commercial Mutual Accident Co. v. Davis, 213 U. S. 245, 29 Sup. Ct. 445, 53 L. Ed. 782.

The doctrine was not overruled, but rather affirmed, in the case of Hunter v. Mutual Reserve Life Ins. Co., 218 U. S. 585, 31 Sup. Ct. 127, 54 L. Ed. 1155, 30 L. R. A. (N. S.) 686. In that case suit was brought in New York by plaintiff, assignee of five judgments obtained in North Carolina, against defendant company after it had withdrawn from the state, but was still collecting premiums on policies held by residents of North Carolina. The North Carolina law, at the time defendant obtained permit to do business therein, required that it execute an irrevocable power of attorney to the insurance commissioner for the service of process. By a subsequent law defendant company was virtually forced to withdraw, and it attempted to cancel its power of attorney to the insurance commissioner. One of the policies sued on had been issued in North Carolina prior to the withdrawal of the company, and, as to this, it was held that the power of attorney could not be canceled, and that the court had jurisdiction; but, as to the remaining policies issued to citizens of New York and New Jersey, it was held that such policies, not having been issued in North Carolina, and not having been issued under the faith of its laws, were not entitled to their remedial sanction. The court held that the case did not come under the doctrine laid down in the Spratley Case, the Phelps Case, or other cases cited, which were carefully distinguished.

The defendant company in the case at bar itself recognized this distinction, as to suits on policies issued in the state and those issued out of the state, when, in its appointment of Coke as its agent for the purpose of citation, it restricted his authority to suits on policies theretofore issued in the state of Texas.

Under the uniform rulings of the insurance department of Texas, in construing the Texas law, an agent's power of attorney could not be canceled without at the same time appointing another agent in his stead. It is well settled jurisprudence that the construction placed on a statute by the executive officers charged with its execution is entitled to great weight. United States v. Cerecedo Hermanos y Compania, 209 U. S. 337, 28 Sup. Ct. 532, 52 L. Ed. 821; United States v. Finnell, 185 U. S. 236, 22 Sup. Ct. 633, 46 L. Ed. 890.

Not only did the defendant company attempt to cancel Coke's power of attorney without appointing another agent, but it did so after the first suit by plaintiff had been filed, and, it would seem, for the express purpose of preventing service of process.

The following is quoted from the testimony of La Due, secretary for defendant company:

"Q. At the date of such revocation (revocation of Alex. Coke's power of attorney), March 17, 1914, did not the company actually know that suit had been filed against it on this Hagler policy? A. At the date of this revocation, March 17, 1914, the company had received the communications from John W. McCracken, dated January 22, 1914 (which inclosed the citation in this case), and from Chas. V. Johnson, dated January 22, 1914 (which inclosed the citation and petition in this suit), but denies that on the date of such revocation, viz., March 17, 1914, any valid suit had been begun against it or valid service obtained upon the defendant company. Q. Did you have personal knowledge of this revocation of Coke's authority being sent? A. I did. Q. Please answer the following question frankly: Was not the revocation of Coke's authority made for the purpose of preventing service upon the defendant company in Texas in the suit brought by Hagler's administrators? Mr. Gregory (attorney for defendant): Question objected to as speculative. Mr. Page (representing plaintiff): Will the commissioner direct an answer to be made? Commissioner: I direct an answer, if he knows. A. I don't know. Q. Do you swear that this was not at least one of the purposes? Mr. Gregory: Same objection. A. I don't know. Q. Has any power of attorney, or authority to receive service, been given to any other person in the state of Texas since the date of the revocation of Coke's authority? A. Not to my knowledge."

In the case of Michael v. Mutual Insurance Co., 10 La. Ann. 737, the court said:

"A foreign insurance company, doing business through an agent in New Orleans, and taking risks in Louisiana, cannot be permitted to frustrate a claim in a Louisiana court, upon a contract made with it, by revoking the power of its agent, on the eve of the institution of a suit for loss, of which it had been notified. Such a proceeding savors of bad faith."

Again, in Pervangher v. Union Casualty & Surety Co., 81 Miss. 32, 32 South. 909, which involved a like question, the court held:

"The contention of the appellee is not to be supported. Having come into the state under conditions prescribed by law, and issued the policy sued on by its agent Moore, it cannot withdraw the agency of Moore, and leave itself without any agent in this regard. To do so would be a fraud upon appellant, and fraud is never tolerated. * * * The appellee could not withdraw his agency so far as to receive service for the company, and its effort in that direction is a nullity."

Again in Fisher v. Traders' Mutual Life Insurance Co., 136 N. C. 217, 48 S. E. 667, it was held:

"The fact that the defendant had ceased to do business in this state, if such is a fact, cannot affect our conclusion. If it had taken out a license to do business in the state, it could neither revoke it, nor could it withdraw from the state, to the plaintiff's prejudice. The statute will not cease to operate as to it until its debts due to citizens of this state are paid."

And again, in Groel v. United Electric Co., 69 N. J. Eq. 397, 60 Atl. 822, the court says:

"It is not necessary to enlarge upon the fatuity of legislation which would permit a foreign corporation to come within the state and transact business upon condition that it name an agency upon whom process should be served, and leave it within the power of the corporation to prevent service by discharging the agent and revoking his authority whenever it pleased, leaving suitors within the state powerless to bring the corporation into court."

[4] If neither McCracken nor Coke, at the time of service upon him, was the legal agent of the company, upon whom citation could be served, then the defendant had no agent in the state for the purpose of citation, and might have been cited by publication under the provisions of article 3070, which was in force at the time of the issuance of the policy, and to the provisions of which it agreed by obtaining a permit and doing business in the state. Article 3096ee, Sayles' Civil Statutes Supp. 1904. A stipulation to this effect in the policy would have been binding, and the case must be considered as though the article was so written into the policy.

In Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565, the leading case as authority that a personal judgment cannot be rendered against a foreign company, brought into court by publication of citation, the exception was recognized where the corporation had itself, in advance, consented thereto. We quote from the opinion:

"If that [the litigation] involves merely a determination of the personal liability of the defendant, he must be brought within its jurisdiction by service of process within the state or his voluntary appearance. Except in cases affecting the personal status of the plaintiff, and cases in which that mode of service may be considered to have been assented to in advance, as hereinafter mentioned, the substituted service of process by publication, allowed by the law of Oregon and by similar laws in other states, where actions are brought against nonresidents, is effectual only where * * * property in the state is brought under the control of the court."

See, also, Wilson v. Seligman, 144 U. S. 41, 12 Sup. Ct. 541, 36 L. Ed. 338; Connecticut Mutual Life v. Spratley, 172 U. S. 602, 19 Sup. Ct. 308, 43 L. Ed. 569; Mutual Reserve v. Phelps, 190 U. S. 147, 23 Sup. Ct. 707, 47 L. Ed. 987.

[5] It is urged, however, and with much force, that the law prevailing at the time the policy was issued, articles 3064 and 3070 of the Revised Statutes of 1895, had been repealed prior to the filing of this suit. This is true. By chapter 108 of the Acts of 1909, making many provisions for domestic and foreign insurance companies, these acts are expressly repealed; but at the time this act of 1909 was pending there was another bill pending expressly providing that all foreign insurance companies should appoint the commissioner of insurance their agent for the service of legal process. This latter act, while approved a few days after the first, went into immediate effect, being over two months before the first act was effective. The two acts must, therefore, be construed together. The Legislature evidently did not intend to leave any gap or interim during which it would not be necessary for any such life insurance company to have an agent in the state for the service of process.

The present law provides that each life insurance company engaged in doing, or desiring to do, business in the state, shall file with the commissioner of insurance an irrevocable power of attorney appointing an agent for the service of process. The defendant company was at that time annually collecting premiums on over $1,000,000 worth of insurance previously issued to citizens of the state. It was its duty under the act to immediately so appoint the insurance commissioner its agent, but it failed to do so. The repealing clause of the first act

of 1909, referred to, must be considered just as it would be were it inserted in the latter act instead of the former, and it certainly cannot be contended that the defendant is not subject to the obligations of either the present law or the repealed articles of the Revised Statutes.

[6] It was evidently not the intention of the Legislature to release nonresident insurance companies doing business in the state from their obligations under the then existing law until they had complied with the provisions of the new law. It was certainly not the intention of the Legislature to itself, by repeal of an old law, cancel outstanding powers of attorney before the insurance companies, then doing business in the state, had, in lieu thereof, given new powers of attorney to the insurance commissioner, under the provisions of the new act.

[7] But, if such were the intention of the Legislature, then such act would be one divesting vested rights and impairing the obligation of contracts, and therefore unconstitutional.

It is urged by counsel for defendant that the repeal of the original articles of the Revised Statutes of 1895 does not in any wise impair the obligation of the contract of insurance, but merely affects the remedy. It is true that the Legislature had the authority to make any change it might have seen fit pertaining to the remedy, or as to the manner of obtaining legal process on defendant, or as to procedure in the trial; but it could not deprive plaintiffs altogether of any remedy by divesting the courts of the state of the jurisdiction which they had at the time the policies were written, and forcing the plaintiffs to go to another state to assert their rights under the contract. Of what avail would be a contract with no court in which to enforce it? It is not a sufficient answer to say that he might sue in a far distant state.

In Connecticut Mutual Life Ins. Co. v. Spratley, 172 U. S. 602, 19 Sup. Ct. 308, 43 L. Ed. 569, the court said:

"It was well said in Baltimore & O. Railroad Co. v. Harris, 12 Wall. 65, at 83, 20 L. Ed. 354, at 359, by Mr. Justice Swayne, in speaking for the court in regard to service on an agent that: 'When this suit was commenced, if the theory maintained by counsel for the plaintiff in error be correct, however large or small the cause of action, and whether it were a proper one for legal or equitable cognizance, there could be no legal redress short of the seat of the company in another state. In many instances the cost of the remedy would have largely exceeded the value of its fruits. In suits local in their character, both at law and in equity, there could be no relief. The result would be, to a large extent, immunity from all legal responsibility.' The court, in view of these facts, was of opinion that Congress intended no such result."

There is no practical difference, in its effect, in taking away a man's right and in taking away the only remedy by which that right can be effectively asserted. When the Duke pronounced judgment against Shylock, graciously sparing his life, but declaring his fortune forfeited, the latter replied:

> "Nay, take my life and all; pardon not that;
> You take my house, when you do take the prop
> That doth sustain my house; you take my life,
> When you do take the means whereby I live."

The exceptions to the citations filed in both cases are overruled.