The Volunteer State Life Insurance Co., Plaintiff and Appellee, v. Manuel V. Domenech, Treasurer of Puerto Rico, Defendant and Appellant.

No. 7956. Argued June 4, 1940.—Decided October 24, 1940.

*George A. Malcolm, Attorney General (B. Fernández García, former Attorney General, on the brief), Emilio de Aldrey, First Assistant Attorney General, and A. García Rodríguez, Attorney in the Office of the Superintendent of Insurance, for appellant. Jaime Sifre, Jr., and Gonzalo Sifre, for appellee.*

Mr. Justice Hutchison delivered the opinion of the court.

The Volunteer State Life Insurance Co. is a Tennessee corporation. Its office is in Chattanooga. It was authorized to do business in Puerto Rico April 30, 1936. It named its general agent in the Island. Through him it solicited and obtained from a number of residents contracts of life insurance. It terminated the contract with the general agent and voluntarily retired from Puerto Rico, October 31, 1936. Thereafter it made no new contracts of insurance in the Island. Policies to the amount of $1,831,680 remained in force. Since October 31, 1936, the company has not exercised any franchise in Puerto Rico although it was authorized by the Insular Superintendent of Insurance, July 1, 1936, for a period which expired June 30, 1937. From its offices in Chattanooga it continued to collect by mail the premiums on contracts made with the residents of Puerto Rico prior to October 31, 1936. It has had no agent in Puerto Rico since October 31, 1936.

The company reported to the Insular Superintendent of Insurance, February 20, 1937, premiums collected during July, August, September and October, 1936, and paid in taxes 1½ per cent on such premiums in accordance with section 59 of the Insular Insurance Law. It informed the Superintendent of Insurance that since October 1 (*sic*), 1936, it was not liable for such taxes nor obliged to report premiums collected after the notice so given. The Insular Superintendent of Insurance from time to time thereafter insisted that the company should report premiums charged after October 31, 1936, and should pay the taxes thereon.

■■ The question is whether the company is liable for these taxes under section 59, *supra* (Laws of Puerto Rico 1921, 522), which reads in part as follows:

"Every life-insurance transaction effected in Puerto Rico, and the life-insurance of any person resident in this Island effected outside the country by foreign companies authorized to transact insurance in Puerto Rico, shall pay a franchise tax of one and one-half

($1\frac{1}{2}$) per centum on the amount of the gross premium charge for such insurance.''

The district court held that the company was not so liable and ordered the return of taxes paid under protest with costs to plaintiff.

Appellant relies on: *Mutual Life Ins. Co.* v. *Spratley,* 172 U.S. 602; *Conn. Mutual Accident Co.* v. *Davis,* 213 U.S. 245; *Hagles* v. *Security Mutual Life Ins. Co.,* 244 F. 863; *Mutual Reserve* v. *Phelps,* 190 U.S. 147; *State* v. *Ackerman,* 51 Ohio St. 163, cited in *John Hancock Mutual Life Ins. Co.* v. *Warren,* 181 U.S. 73, 74 and 75; and 1 Joyce on Insurance (2d ed.), section 328 (*a*).

In *Mutual Life* v. *Spratley, supra,* the Supreme Court said:

'' .... It cannot be said with truth, as we think, that an insurance company does no business within a State unless it have agents therein who are continuously seeking new risks and it is continuing to issue new policies upon such risks. Having succeeded in taking risks in the State through a number of years, it cannot be said to cease doing business therein when it ceases to obtain or ask for new risks or to issue new policies, while at the same time its old policies continue in force and the premiums thereon are continuously paid by the policyholders to an agent residing in another State, and who was once the agent in the State where the policyholders resided ...''

In *Provident Sav. Life Assur. Society* v. *Kentucky,* 239 U.S. 103, 113, the same Court, speaking through Mr. Chief Justice Hughes, said:

'' .... There is, however, a manifest difficulty in holding that the mere continuance of the obligation of the policies constituted the transaction of a local business for which a privilege tax could be exacted. As a privilege tax, the tax rests upon the assumption that what is done depends upon the State's consent. But the continuance of the contracts of insurance already written by the Company was not dependent on the consent of the State. It is true that acts might be done within the State in connection with such policies, as for example in maintaining an office or agents although new insurance was not written or solicited, which could be considered to amount

to the continuance of a local business. In such case it would be the actual transaction of business that would furnish the ground of the license exaction, and not the mere·existence of the obligation under policies previously written. These policies are contracts already made; the State cannot destroy them or make their mere continuance, independent of acts within its limits, a privilege to be granted or withheld. Neither the continuance of the obligation in itself, nor acts done elsewhere on account of it, can be regarded as being within the State's control. (Authorities.)''

It seems to be fairly well settled that the same acts may constitute the doing of business within a state for one purpose and not for another. See 2 Cooley Taxation (4th ed.) p. 1838, section 920. In passing upon the question of liability for a franchise tax, the courts seem unwilling to go as far as they have gone in dealing with the question as to ''Whether a foreign corporation is doing business in the state so as to be subject to process in an action against it.'' See 9 Fletcher Cyc. Corp. 10, 299, section 6021, and cases *supra*. In any event, we are unable to distinguish the instant case from that of the *Provident Sav. Life Ass. Society* v. *Ky.*, *supra*. The statutory provision there under consideration follows:

''4226. *Reports and Taxes.*—Every life insurance company, other than fraternal assessment life insurance companies, not organized under the laws of this state, but doing business therein, shall, on the first day of January in each year, or within thirty days thereafter, return to the auditor of public accounts for deposit in the insurance department a statement under oath of all premiums receipted for on the face of the policy for original insurance and all renewal premiums received in cash or otherwise in this state, or out of this state, on business done in this state during the year ending the 31st day of December, and no deductions shall be made for dividends, or since the last returns were made, on all premiums receipts, which shall include single premiums, annuity premiums, and premiums received for renewal, revival or reinstatement of policies, annual and periodical premiums, dividends applied for premiums and additions, and all other premium payments received during the preceding year on all policies which have been written in, or on, the lives of residents of this state, or out of this state on business done

in this state, and shall at the same time pay into the state treasury a tax of two dollars ($2.00) upon each one hundred dollars ($100.00) of said premiums as ascertained. Every life insurance company not organized under the laws of this state, but doing business therein on what is known as the industrial insurance plan, whereby weekly premiums are collected, shall at the same time make a return to the auditor of public accounts for deposit in the insurance department, a statement under oath of all premiums received on insurance written exclusively on the industrial plan, and shall at the same time pay into the state treasury a tax of two dollars ($2.00) upon each one hundred dollars ($100) of said premiums as ascertained. Any insurance company mentioned in this section doing insurance business other than on the industrial plan, shall make reports and pay into the state treasury the taxes due thereon under each report.''

By the terms of section 59 of our own Law, *supra,* the tax there imposed is ''a franchise tax.'' Section 2 of the same law is also significant. It provides that:

''The maintaining of a special agent in Porto Rico for the purpose of investigating and settling any loss suffered on account of an insurance contract lawfully made in this Island, or for the purpose of liquidating such assests and liabilities as may result from the transactions of a company while such company was registered in the country, shall not be considered as doing business in Porto Rico.'' (Session Laws 1921, p. 526.)

See also section 149.

The judgment appealed from must be affirmed.

Mr. Chief Justice Del Toro took no part in the decision of this case.