**ASSET ALLOCATION AND MANAGEMENT COMPANY, Plaintiff–Appellee,**

v.

**WESTERN EMPLOYERS INSURANCE COMPANY, Defendant–Appellant.**

**No. 89–1686.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 28, 1989.

Decided Dec. 26, 1989.

As Corrected Jan. 3, 1990.

James J. Stamos (argued), Shelley L. Rice, Coffield, Ungaretti, Harris & Slavin, Chicago, Ill., for plaintiff-appellee.

John Kakacek, Paul F. Stack, Stack & Filpi, Chicago, Ill., Charles J. Hecht (argued), New York City, for defendant-appellant.

Before POSNER and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

POSNER, Circuit Judge.

This interlocutory appeal from rulings leading up to the grant of an injunction brings before us a tangle of jurisdictional and procedural questions. In 1986, Asset Allocation and Management Company, a partnership of three corporations which provides investment advice to insurance companies, was hired by Western Employers Insurance Company, a California insurance company. Asset advised Western to invest in a trading program administered by Jefferies & Company, a brokerage firm. Western took Asset's advice and invested. The program was a flop. Western lost millions. In 1987, thoroughly disenchanted, Western stopped paying Asset the investment-advisor fees called for by their contract, threatened to sue it in California for fraud and securities violations, but invited it to arbitrate their differences. Asset responded by filing the present suit in May 1988, a diversity breach of contract suit for $18,500 in unpaid investment-advisor fees. The suit was filed a year before the increase to $50,000 in the minimum amount in controversy in diversity suits took effect.

Western had filed a number of motions in Asset's suit but had not yet filed its answer when on January 7, 1989, it brought suit in federal district court in California against Asset, the three corporations that are the partners in Asset, and four individuals and firms that allegedly control Asset. The suit charged that in inducing Western to invest with Jefferies, Asset had made misrepresentations in violation of federal and state law. Damages of some $3.5 million—an amount equal to Western's trading losses—were sought.

On January 23, 1989, two and a half weeks after suing Asset in California, Western finally answered the complaint in the present suit. It attached to its answer a counterclaim identical to its California complaint—whereupon Asset moved Judge Conlon, the district judge presiding over its suit, to enjoin Western from proceeding with its California suit. She granted the motion and not only enjoined Western from proceeding in the California suit but also ordered Western to dismiss that suit. Asset had already asked the judge in California for a stay, but this request (which so far as we can determine has never been acted on) became moot when Judge Conlon issued the injunction.

The injunction is of course an interlocutory order, since it does not wind up the litigation, which remains pending before Judge Conlon. But it is appealable regardless of finality by virtue of 28 U.S.C. § 1292(a)(1), and this even though it is not a temporary or preliminary injunction. *Parks v. Pavkovic*, 753 F.2d 1397, 1402–03 (7th Cir.1985). The question is what rulings it brings up with it for our review—what, in other words, is the scope of pen-

dent appellate jurisdiction. The answer is twofold. First, any ruling on which the validity of the injunction turns is reviewable, *Elliott v. Hinds*, 786 F.2d 298, 301 (7th Cir.1986); *Shaffer v. Globe Protection, Inc.*, 721 F.2d 1121, 1124 (7th Cir.1983); *Associated Business Telephone Systems Corp. v. Greater Capital Corp.*, 861 F.2d 793, 796 (3d Cir.1988); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 837 n. 1 (9th Cir.1986), such as the ruling that the district court in Illinois has jurisdiction over Western; for without jurisdiction the court could not properly order Western to do or not do anything. The principle is no different from that governing appeals from final decisions: the appeal brings up not only the final decision but also all prior rulings that affect the validity of that decision. *Disher v. Information Resources, Inc.*, 873 F.2d 136, 140–41 (7th Cir.1989); *EEOC v. Sears, Roebuck & Co.*, 839 F.2d 302, 353 n. 55 (7th Cir.1988). Otherwise the decision would not be fully reviewable, and we would have piecemeal appealability with a vengeance.

■ Second, in the interest of judicial economy, the appellate court can in its discretion review rulings that are related but not essential to the validity of the injunction. *Parks v. Pavkovic, supra*, 753 F.2d at 1402; *Bittner v. Sadoff & Rudoy Industries*, 728 F.2d 820, 826–27 (7th Cir.1984); *Maybelline Co. v. Noxell Corp.*, 813 F.2d 901, 903 n. 1 (8th Cir.1987); *Intermedics Infusaid, Inc. v. Regents of University of Minnesota*, 804 F.2d 129, 134 (Fed.Cir. 1986). There is tension between these two lines of cases, including the cases within this circuit: *Shaffer* and *Elliott* imply that there is no power to review a ruling that is not dispositive of the injunction's validity, *Parks* and *Rudoy* that there is. We attempted a reconciliation in *Patterson v. Portch*, 853 F.2d 1399, 1403 (7th Cir.1988), which, after describing pendent appellate jurisdiction broadly ("an order not itself appealable, but closely connected to an order that is appealable, may be reviewed as a pendant to the latter order"), construed it narrowly: "we can review an unappealable order only if it so entwined with an appealable one that separate consideration would involve sheer duplication of effort by the parties and this court." No further refinement need be attempted here, for with one exception we shall have to review only those prior rulings by the district judge that are reviewable under *any* view of pendent appellate jurisdiction because essential to the injunction's validity—and the exception is a ruling that a recent federal statute makes reviewable regardless of finality.

■ We begin with personal jurisdiction. Under Illinois' long-arm statute, Asset could sue Western in Illinois if Asset's cause of action for breach of contract arose from Western's "transaction of any business within" the state. Ill.Rev.Stat. ch. 110, ¶ 2–209(a)(1). Judge Conlon thought it did, citing the following facts: Western mailed its checks in payment for Asset's advisory fees to Asset's office in Illinois, made one phone call to that office, and, as the losses mounted up, mailed several letters of inquiry and complaint to Asset. Other facts tug the other way, however: Asset solicited the contract in California— that is, sent its marketing people to California to persuade Western to hire it. The contract was signed there. The securities that Asset was to advise Western on were also there, as was Jefferies & Company, which invested those assets under Asset's direction, pursuant to a contract between Jefferies and Western made in California. And since no employee of Western ever visited Asset's office in Illinois, the advice that Asset gave Western pursuant to the contract must have been given in California, unless it was given by mail or (more probably) by phone; but neither the district court nor Asset suggests it was. No doubt the advice was *formulated* in Illinois, at Asset's office; but neither the district court nor Asset suggests that the place of formulation—that is, the place of Asset's performance—determines jurisdiction. The question is whether Western was transacting business in Illinois, not whether Asset, the Illinois resident, was. *J.J. & J. Foundation Co. v. Tommy Moore, Inc.*, 640 F.Supp. 1119, 1121–22 and n. 4 (N.D.Ill. 1986).

**570**

If the district court's finding of personal jurisdiction is correct, the breach of *any* contract between a resident of Illinois and a nonresident is actionable in an Illinois court—at least as a matter of Illinois law, for there are constitutional limitations on a state's attempt to assert jurisdiction over nonresidents, though we shall not have to explore those limitations in this case. Payment of the contract price will almost always be sent to Illinois, and there is bound to be some correspondence with the Illinois firm as well. Suppose the traveling salesman for an Illinois manufacturer of gewgaws sold one out of his traveler's case in the Australian outback to a sheep farmer who agreed to remit monthly installment payments to the manufacturer's office in Illinois, later wrote the manufacturer complaining that the gewgaw did not work, and, not having received satisfaction, stopped making installment payments. Under the logic of the district court's ruling, the manufacturer could sue the farmer in an Illinois court for the balance of the contract price.

The arm of the Illinois statute is not *that* long. *Cook Associates, Inc. v. Colonial Broach & Machine Co.,* 14 Ill.App.3d 965, 304 N.E.2d 27 (1973), goes the furthest of any case we know, and it was indeed much like this case but with a vital difference: the nonresident responded to the Illinois resident's offer by phoning his acceptance to the offeror in Illinois. This was transacting business in Illinois in a literal sense even though the nonresident's contact with the state was otherwise as tenuous as here. Asset's offer, in contrast, was made *and accepted* in California. Western's dealings in Illinois were limited to paying and complaining. If those dealings are enough to confer jurisdiction, the long-arm statute reaches every contract with an Illinois resident.

 There may however be, an alternative basis for personal jurisdiction in this case. Under Illinois law, a firm that does business in Illinois on a regular basis may be sued in an Illinois court even if the plaintiff's cause of action does not grow out of that business. *Cook Associates,*

*Inc. v. Lexington United Corp.,* 87 Ill.2d 190, 199–203, 57 Ill.Dec. 730, 734–35, 429 N.E.2d 847, 851–52 (1981); *Reeves v. Baltimore & Ohio R.R.,* 171 Ill.App.3d 1021, 122 Ill.Dec. 145, 526 N.E.2d 404 (1988); *Heil v. Morrison Knudsen Corp.,* 863 F.2d 546, 548 (7th Cir.1988). Western used to sell insurance on a large scale to employers in Illinois. But in January 1987—almost a year and a half before Asset filed this suit—it stopped accepting any new insurance business in Illinois or any renewals of expiring policies, and in April 1987 its license to do business in Illinois was revoked. Yet it remained obligated to pay losses to the holders of existing, unexpired policies, and in the first quarter of 1988 paid $83,696. There the record gives out; there is no evidence of the losses it paid in April and May (the suit was filed in May), if any.

Western argues that the dribs and drabs of business it continued to do in Illinois after it decided to pull out were not so regular, continuous, and substantial as to subject it to the jurisdiction of the Illinois courts on a "doing business" theory. And it is quite true that the Illinois courts, in the cases we have just cited, insist that the business done by the defendant in Illinois be intentional, substantial, and continuous rather than inadvertent, trivial, or sporadic, that it continue up to the time of suit, and that it evidence a purpose on the part of the defendant to avail himself of the protection of the laws of Illinois. But the decision to withdraw from a state is not equivalent to actual withdrawal. Rather than causing an immediate cessation of business, Western's decision to withdraw merely inaugurated a gradual, albeit inexorable, decline. At some point before complete cessation the decline would carry Western below the level required by Illinois' "doing business" doctrine, but whether that point was reached in May 1988 is unclear. The record is incomplete, and the district judge, although alluding to the "doing business" doctrine, made no finding that there was personal jurisdiction under it.

We can find no recent precedents, but the old law generally (although not unani-

mously) considers the paying of losses and the collecting of premiums to be "doing business" even though the insurance company is writing no new policies. *Connecticut Mutual Life Ins. Co. v. Spratley*, 172 U.S. 602, 610–11, 19 S.Ct. 308, 311–12, 43 L.Ed. 569 (1899); *Hagler v. Security Mutual Life Ins. Co.*, 244 Fed. 863, 867–68 (N.D.Tex.1917); contra, *Tucker v. Columbian National Life Ins. Co.*, 232 Mass. 224, 122 N.E. 285 (1919); see generally 2A Couch on Insurance 2d, § 21:67 (rev. ed. 1984). This makes it all the more critical to know whether Western was still doing substantial business (so defined) in Illinois when Asset brought this suit.

We could stop, having shown that Judge Conlon's opinion does not establish that the district court had jurisdiction over Western. But since on remand she may find jurisdiction on a "doing business" theory and therefore reinstate the injunction, we shall consider Western's argument that the injunction was invalid even if the court had jurisdiction; otherwise the case may become a yo-yo.

■ The injunction has two parts: it stays Western from proceeding with its suit against Asset in California, and it orders Western to dismiss that suit. The latter relief had not been requested by Asset and was gratuitous. Suppose Asset dismissed its suit in Illinois. Western's counterclaim would remain, but unless litigation on it was well advanced there would be no reason to forbid Western's pursuing that claim in California rather than in Illinois. Yet under the district court's order Western could not just move to have the stay lifted if this happened, but would have to file a fresh suit in California that might encounter statute of limitations problems. An injunction requiring Western to dismiss its California suit would have been proper if the judge had found that Western was harassing Asset (with "vexatious and multiplicative" litigation, as the cases sometimes say). *Medtronic, Inc. v. Intermedics, Inc.*, 725 F.2d 440, 442 (7th Cir.1984); *Tripati v. Beaman*, 878 F.2d 351 (10th Cir.1989) (per curiam); *Donovan v. Dallas*, 377 U.S. 408, 415–18, 84 S.Ct. 1579, 1583–

85, 12 L.Ed.2d 409 (1964) (Harlan, J., dissenting). But the judge made no such finding. And while courts sometimes do dismiss (without prejudice), rather than stay, duplicative actions even if there has been no finding of harassment, *Pumpelly v. Cook*, 106 F.R.D. 238 (D.D.C.1985); *Donaldson, Lufkin & Jenrette, Inc. v. Los Angeles County*, 542 F.Supp. 1317 (S.D.N.Y.1982); but see *Leonard F. Fellman Co. v. Smith–Corona Marchant Inc.*, 27 F.R.D. 263 (E.D.Pa.1961), the cases that do this ignore the statute of limitations problems that this mode of disposition—to which some judges are tempted by desire to show a clear docket—can create. We have disapproved the practice in the related area of parallel state and federal suits. *Rosser v. Chrysler Corp.*, 864 F.2d 1299, 1308–09 (7th Cir.1988); *Lumen Construction, Inc. v. Brant Construction Co.*, 780 F.2d 691, 698 (7th Cir.1985); *Evans Transportation Co. v. Scullin Steel Co.*, 693 F.2d 715, 717–18 (7th Cir.1982).

Granted, the statute of limitations problems may not be serious. There is authority that the filing of a claim tolls the statute of limitations on any compulsory counterclaim, by analogy to the "relation back" language of Rule 15. *Burlington Industries, Inc. v. Milliken & Co.*, 690 F.2d 380, 389 (4th Cir.1982); 6 Wright & Miller, Federal Practice and Procedure § 1419 (1971). But why take chances? It is simpler just to stay the second suit. For completeness, we note that if the second suit is harassing—vexatious—an abuse of process, the proper disposition is neither a stay nor a dismissal without prejudice; it is dismissal with prejudice, so that the plaintiff cannot refile the suit.

■ The other part of Judge Conlon's injunction, which forbids Western to proceed with its California suit, raises a distinct issue. Her ground was that if a claim is a compulsory counterclaim, the plaintiff is entitled to enjoin the defendant from litigating it other than as a counterclaim in the plaintiff's suit, provided that that suit was filed before the defendant brought his own suit to enforce his claim. The district judge found the source of this rule in the

language and purpose of the compulsory counterclaim rule, Rule 13(a) of the Federal Rules of Civil Procedure. That rule says nothing about injunctions, however, and the usual method by which it is enforced is simply by the plaintiff's pleading the judgment as res judicata in the defendant's suit. *Baker v. Gold Seal Liquors, Inc.,* 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 2506 n. 1, 41 L.Ed.2d 243 (1974); *Fagnan v. Great Central Ins. Co.,* 577 F.2d 418, 420 (7th Cir. 1978). If Asset obtained a judgment against Western in the present suit, it could plead that judgment as a bar to Western's suit in California. *Fullerton Aircraft Sales & Rentals, Inc. v. Beech Aircraft Corp.,* 842 F.2d 717, 722 (4th Cir. 1988). Such a prospect will usually be enough to induce a defendant to file his compulsory counterclaim even if he would prefer to litigate in another court; it was enough here.

■ If not Rule 13(a), what could be the basis for the district court's assertion of power to enjoin Western from proceeding with its suit in California? One possibility is the equitable doctrine mentioned earlier that entitles a litigant to enjoin his adversary from tormenting him with a multiplicity of identical suits. That ground might be available here if Western's motive for suing in California had been to make it prohibitively costly for Asset to recover its unpaid advisory fees—a modest $18,500, hardly enough to warrant litigating one federal suit, let alone two. But that is not Western's game. Western does not give a straw for the $18,500 and in fact offered to pay Asset $18,501 in satisfaction of its claim if Asset would agree that Western's counterclaim was not compulsory. What Western wants is to recover more than $3.5 million in trading losses sustained as a result of its contract with Asset. That claim may or may not have merit, but it is not just a ploy to allow Western to get away with not paying the unpaid balance of the contract price.

■ Despite the absence of a clear source of authority for enjoining a second, nonharassing lawsuit (albeit one identical to the first), there is overwhelming case

authority that the first court has power, independently of the equitable doctrine that bars vexatious litigation, to enjoin the defendant from bringing a separate suit against the plaintiff in another court, thereby forcing the defendant either to litigate his claim as a counterclaim or to abandon it. The power is assumed in *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952), and asserted and exercised in a host of lower-court decisions. The following are merely illustrative: *Warshawsky & Co. v. Arcata National Corp.,* 552 F.2d 1257, 1263–65 (7th Cir.1977); *Martin v. Graybar Electric Co.,* 266 F.2d 202 (7th Cir.1959); *Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197, 1202–04 (2d Cir.1970) (Friendly, J.); *Decker Coal Co. v. Commonwealth Edison Co., supra,* 805 F.2d at 843–44; *Schauss v. Metals Depository Corp.,* 757 F.2d 649, 654 (5th Cir.1985); *Roth v. Bank of the Commonwealth,* 583 F.2d 527, 538 (6th Cir.1978); *National Equipment Rental, Ltd. v. Fowler,* 287 F.2d 43 (2d Cir.1961); *Seattle Totems Hockey Club, Inc. v. National Hockey League,* 652 F.2d 852 (9th Cir.1981); and see 6 Wright & Miller, *supra,* § 1418. The power is viewed as an outgrowth of the equitable doctrine. *Martin v. Graybar Electric Co., supra,* 266 F.2d at 204; *Crosley Corp. v. Hazeltine Corp.,* 122 F.2d 925, 928 (3d Cir.1941). There is also talk in the older cases about "protecting" jurisdiction, but *jurisdiction* is not threatened by a parallel proceeding in another court.

The real basis for the power, it seems to us, is practical. A court—some court—should have the power to prevent the duplication of litigation even though neither party is acting abusively; this is implicit in the very concept of a *compulsory* counterclaim. It might as well be the first court. It is not a traditional equitable power that the courts are exercising in these cases but a new power asserted in order to facilitate the economical management of complex litigation.

■ But it is a power, not a duty. *Warshawsky & Co. v. Arcata National Corp., supra,* 552 F.2d at 1265. It is to be

exercised with due regard for the balance of convenience in litigating the parties' disputes in one forum rather than another. *Columbia Plaza Corp. v. Security National Bank,* 525 F.2d 620, 627 (D.C.Cir. 1975); *Brierwood Shoe Corp. v. Sears, Roebuck & Co.,* 479 F.Supp. 563, 568 (S.D. N.Y.1979); *Blessing v. Norman,* 646 F.Supp. 82, 84 (N.D.Ga.1986). There is, no doubt, a *presumption* that subject to the principles that govern requests for transfer to a more convenient forum, the first case should be allowed to proceed and the second should be abated; and certainly Judge Conlon was right not to countenance the simultaneous litigation of identical claims in two federal courts. But the presumption is rebuttable. *Orthmann v. Apple River Campground, Inc.,* 765 F.2d 119 (8th Cir.1985); *Polaroid Corp. v. Casselman,* 213 F.Supp. 379 (S.D.N.Y.1962); *Bamdad Mechanic Co. v. United Technologies Corp.,* 109 F.R.D. 128, 133 (D.Del.1985) (dictum). It may—no stronger statement is possible—have been rebutted here. As we are about to see, Western may not be able to obtain jurisdiction in Illinois over one of the defendants in its California suit. More important, Asset's suit in Illinois appears to be a sideshow to the real dispute between the parties, which is over liability for Western's trading losses. In these circumstances, we are puzzled by Judge Conlon's action in enjoining the California suit—especially when Asset had filed a motion with the district judge in California to stay that suit. Judge Conlon could have waited until that motion was decided before issuing an injunction. If the judge in California issued the stay, the injunction would be moot; and since, with the demise of the *Enelow–Ettelson* doctrine in *Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988), stays of proceedings in the court granting the stay, as distinct from injunctions staying proceedings in another court, are no longer appealable, the litigation would not have been interrupted, as it has been, with an interlocutory appeal.

If Judge Conlon had discussed the circumstances that we have mentioned as weighing against the issuance of an injunction, and had deemed them overborne by other circumstances, we might well decide to uphold the injunction, for its issuance was the exercise of a discretionary power. But her opinion contains no discussion of the circumstances and indeed no indication that she thought she was exercising a discretionary power as distinct from a mandatory one. The opinion reads as if she issued the injunction as a matter of course, which would be proper if there were an absolute rule that the first federal court seised of a dispute may never relinquish jurisdiction to the second; but as we have seen the rule is not absolute. Since the injunction must be vacated anyway because of the error in the ground for personal jurisdiction, we trust that should jurisdiction be found on an alternative basis on remand Judge Conlon will, before reinstating the injunction, address the considerations that we have reviewed.

 In questioning the propriety of the injunction we do not, however, accept Western's contention that the counterclaim was not really compulsory. The breach of contract was precipitated by the trading losses that in turn precipitated the California suit; those losses were the common occurrence, the seed or nub, out of which both claim and counterclaim arose. *Warshawsky & Co. v. Arcata National Corp., supra,* 552 F.2d at 1261; *Podhorn v. Paragon Group,* 795 F.2d 658 (8th Cir.1986). We acknowledge the tension between *Warshawsky* and *Valencia v. Anderson Bros. Ford,* 617 F.2d 1278, 1291–92 (7th Cir. 1980), reversed on other grounds, 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981), which held that a claim for the unpaid balance of a loan is not a compulsory counterclaim to a suit for violation of the federal Truth in Lending Act; see also *Board of Education v. Admiral Heating & Ventilation, Inc.,* 511 F.Supp. 343, 346 (N.D.Ill. 1981). But *Lacy v. General Finance Corp.,* 651 F.2d 1026, 1029 (5th Cir.1981), holds the opposite. Some day it may become necessary to reexamine *Valencia.* But not in this case. The critical consideration in *Valencia* was that the suit was under federal law and the counterclaim un-

der state law, so that a state-law claim was being sucked into federal court by Rule 13(a). That consideration is absent from this case. Western's counterclaim prominently includes a state-law defense (fraud) to the state-law suit for breach of contract. *Warshawsky* therefore governs.

■ Nor is it material that the counterclaim named additional parties, besides Asset's three partners, as counterclaim defendants. Rule 13(h) allowed them to be joined pursuant to Rule 20(a)—provided there was personal jurisdiction over them. If, as Western fears, the district court lacks personal jurisdiction over one of them, this would make the counterclaim permissive as to that defendant, *United Artists Corp. v. Masterpiece Productions, Inc.*, 221 F.2d 213, 217 (2d Cir.1955), but not as to the others unless their presence was "required for adjudication." Rule 13(a). This is an essential condition, since otherwise the compulsory-counterclaim rule could be easily defeated by the naming of additional counterclaim defendants. Nevertheless the district judge had no possible ground for enjoining the suit in California from proceeding against a defendant over which the district court in Illinois might not be able to obtain jurisdiction.

Western argues that the injunction was improper for the further reason that Asset's complaint fails to state a claim for breach of contract, but this argument is frivolous. Western also takes issue with two other rulings by the district judge—the denial of its motion to compel Asset to arbitrate its differences with Western and the denial of its motion to transfer the suit to California under 28 U.S.C. § 1404 (*forum non conveniens*). Were it not for a new statute (of which more shortly), we would doubt whether either ruling was properly before us. The motion to compel arbitration is analytically unrelated to the issues in the injunction proceeding, and rather than the denial of the motion being essential to the injunction the grant of the motion would have required a stay of related proceedings. 9 U.S.C. § 15(b)(2). The denial of the motion to transfer presents a closer question, since it is inconceivable

that Judge Conlon would have enjoined Western from proceeding in a more convenient forum. But review of her ruling would be premature, since she will want in any event to reexamine it in the light of our discussion of the injunction.

■ By a statute that took effect one month before Judge Conlon denied the motion to arbitrate, Congress made orders denying such motions appealable without regard to finality. 9 U.S.C. § 15(a)(1)(B). So we must reach the merits of Western's appeal from the denial of the motion to arbitrate even though that appeal is not within our pendent appellate jurisdiction.

■ The contract whereby at Asset's suggestion Western hired Jefferies to invest Western's securities contained a clause requiring arbitration of any dispute arising out of or relating to the contract. Although Asset did not sign the contract, Western contends that Asset is bound as Jefferies' principal. A contract binds not only its signatories but also their assigns, successors, employees, etc., but it does not follow that every duty imposed by a contract is imposed on all those who are in some degree bound by it. Western would have a remedy against Jefferies if an employee of Jefferies caused Jefferies to violate the contract, but it could not force that employee to arbitrate a dispute with Western merely because he is in a sense bound by the contract. If Jefferies had assigned the contract to Asset, then Asset would have been substituted for Jefferies in the arbitration clause as in the contract's other clauses. But there was no assignment, and the arbitration clause did not authorize Western to demand arbitration of anyone and everyone standing in an agency relationship with Jefferies. Western could have negotiated an arbitration clause in its contract with Asset. But it could not reasonably assume that the arbitration clause in its contract with Jefferies would compel Asset to arbitrate any and all disputes that Western might have with it.

If Jefferies were an alter ego of Asset, then Western could substitute Asset in the arbitration agreement with Jefferies. And we know from *Letizia v. Prudential Bache*

*Securities, Inc.,* 802 F.2d 1185, 1187–88 (9th Cir.1986), that if Western had gotten into a dispute with employees of Jefferies over the handling of the account and sued them, they could force Western to arbitrate under the agreement between it and Jefferies, for such disputes were within the contemplation of the agreement. The same would be true if Asset, in asking for payment of its advisor's fee, were acting as Jefferies' agent. *In re Oil Spill by Amoco Cadiz,* 659 F.2d 789, 795–96 (7th Cir.1981). But the dispute out of which the present case arises is not a dispute between Jefferies and Western, with Asset being either Jefferies' puppet master or its cat's-paw. It is a dispute between Western and Asset, and Asset has never agreed to put itself in a position where an arbitrator might order it to pay millions to Western.

To summarize, we affirm the denial of Western's motion to dismiss Asset's suit under Rule 12(b)(6) (failure to state a claim), and we affirm the denial of Western's motion to arbitrate, but we vacate the injunction and remand the case for further proceedings consistent with this opinion. No costs in this court.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH DIRECTIONS.

RIPPLE, Circuit Judge, concurring.

I concur fully in the court's analysis of the two issues of personal jurisdiction presented in this appeal. As the court notes, *supra* p. 571, our analysis "could stop" here. In my view, it *should* stop here.

The issue of whether Western was continuously and systematically doing business at the time it was made a party to this action is a serious one. *See Reeves v. Baltimore & Ohio R.R.,* 171 Ill.App.3d 1021, 122 Ill.Dec. 145, 526 N.E.2d 404, 408 (1988). *See generally Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Unless it is resolved in favor of Asset, there will be no need to proceed further and to address the other issues that the court addresses here. Indeed, it is not at all certain that the court's methodology achieves any significant judicial economy. If the district court determines that Western is amenable to jurisdiction in Illinois and reenters its injunction, the jurisdictional issue undoubtedly will be appealed. The merits of the injunction then can be reviewed *if* this court determines that the district court correctly determined that it had jurisdiction.

The majority is quite correct in noting that an appellate court can, in its discretion, review rulings that are closely related, even if not absolutely essential, to the validity of the injunction. However, I do not read these authorities to suggest that we ought to address in detail such issues while the fundamental question of the jurisdiction of the district court remains in serious doubt.